TOWN OF CHARLOTTE *vs.* WEBB and NEWELL.

The court will not, on motion, abate a writ in the name of a town, because it is served by a constable of such town.

A receipt, signed by a collector, for a tax-bill and warrant, is evidence in a suit against such collector and his sureties, on their bond to indemnify the town; and *prima facie* evidence that the rate-bill was regularly made out.

In such suit, an extent issued by the Treasurer of the State against the inhabitants of the town, which has been paid by them, is admissible in evidence, without showing the previous proceedings of the Treasurer.

Where a collector receives a rate-bill for a state tax, signed by one of the selectmen, and promises to procure the signature of the other, the jury may presume that the signature of the other selectman was obtained.

The rule of damages, in a suit against a collector and his sureties, is the amount of the rate bill not paid over agreeable to the warrant.

This was an action brought in the county court upon a bond executed by the defendants to the selectmen of the town of Charlotte, naming them, conditioned as follows:

"The condition of the above obligation is such, that whereas the above named Aaron B. Webb has this day, by the inhabitants of said town of Charlotte, in legal meeting, been duly chosen first constable and collector of town taxes in said town for the year ensuing:—now in case the said Aaron B. shall well and truly execute and discharge the duties of his said offices respectively, and every part thereof, and save the inhabitants of said town, and all others concerned, free from any loss or damage in consequence of any misfortune, malfeasance, or nonfeasance, in the duties of said offices; then this obligation is to be null and void, otherwise to be and remain in full force and virtue."

The breaches assigned correspond with the pleas in bar.

The first plea of the defendants was in abatement, and states in substance, that the writ was served by Budsey Newell, being an inhabitant of said town of Charlotte, and interested in the suit. To this plea the plaintiffs demurred specially, and assigned the following causes:

1. In the said plea the defendants make full defence, and that a plea of abatement is not good after full defence.

2. There is no prayer of judgment of the said writ.

3. It is not stated in said plea, in what manner nor by whom said writ is served.

4. It is not stated that the said Newell was interested.

5. The said plea is argumentative and uncertain.

6. The defendants, in conclusion, merely pray judgment, that the defendants may be ———.

Joinder by defendants.—The demurrer prevailed.

CHITTENDEN,
January,
1835.

Charlotte
vs.
Webb&Newell.

The next plea was the general issue, and then the following special pleas in bar.

1. That the inhabitants of Charlotte did not, at their annual March meeting, vote a tax of three cents on the list of the polls and rateable property of the inhabitants of said town, for the purpose of paying town charges and expenses.

2. That neither the select men of said town of Charlotte, nor any person in their behalf, did make out and deliver to the said Aaron B. during the term he was so elected first constable and collector of town taxes of said town of Charlotte, as the plaintiffs in their declaration have alleged, any rate or tax-bill against the inhabitants of said town of Charlotte, assessed on the list of the polls and rateable estate of said town of Charlotte, for the year 1827, or any warrant whatever for the collection of such supposed tax-bill.

3. That neither the selectmen of said town of Charlotte, or any one in their behalf, did during the time the said Aaron B. Webb was so elected constable and collector aforesaid, deliver any tax-bill whatsoever against the inhabitants of said town of Charlotte, for a state tax on said town of two cents and five mills on the dollar, on the list of the polls and rateable estate of the inhabitants of said town of Charlotte, for the year 1828.

Upon these issues a verdict was returned for the plaintiffs, and the cause came here upon the following bill of exceptions.

This was an action of debt on bond, executed by the defendants to the selectmen of the town of Charlotte, conditioned that the said A. B. Webb should faithfully discharge the duties of first constable and collector of taxes for said town.

The plaintiffs, in support of the issue on their part, offered in evidence the bond declared upon; to which the defendants objected, but the objection was overruled and the bond admitted. To which defendants excepted.

The plaintiffs, in further support of the issue on their part, offered in evidence a copy of the proceedings of their town meeting in March, 1828; to which defendants objected. The objection was overruled and the copy admitted. To which defendants excepted.

The plaintiffs, in further support of their issue, offered in evidence a receipt, signed by said Webb, in the words following, viz.

" Received of the selectmen, in the year 1828, a town tax-bill, amounting to four hundred and seventy-five dollars and thirty-two cents, to collect and account for according to law.

Signed,                    A. B. WEBB, Collector."

On the back of said receipt, the following endorsements were made:

"Received 14th Oct. 1829, by the hand of Lyman, $20,00. Received, Charlotte, 9th March, 1829, on the within receipt, $144, 18. Received 13th May, 1829, $45 50. Received, March 10th, 1831, $9 81, on an order in the hands of J. D. Farnsworth. Received, May 4th, 1831, $24 61, endorsed on two orders received by N. Lovely."

To the admission of this receipt the defendants objected, but the objection was overruled and the receipt admitted. Defendants excepted.

The plaintiffs, in further support of their issue, offered in evidence an extent, issued by the treasurer of the state against the inhabitants of said Charlotte, on the first day of January, A. D. 1831; to which the defendants objected, because it did not appear that any extent had previously issued against said constable; but this objection was overruled and the extent admitted, although the defendants urged further objections to its admission as evidence in the case. It appeared that the extent had been paid by plaintiffs.

The plaintiffs, in further support of their said issue, read in evidence a warrant for the collection of state taxes, issued by the treasurer of the state on the third of November, 1828, directed to A. B. Webb as first constable of said town of Charlotte.

J. D. Farnsworth was then called as a witness by plaintiffs, and testified that he made out a rate-bill for the state tax, certified and signed it, and handed it to A. B. Webb, who said he would procure the names of the other selectmen to it; but witness did not know that any other selectman signed it. Charles Grant, J. D. Farnsworth, and Nathaniel Newell, were the selectmen of Charlotte in the year 1828. No testimony was adduced tending to prove that Webb had collected any more taxes than what he had paid over and procured endorsed on his receipt.

Here the plaintiffs rested their case.

The defendants then contended, that the plaintiffs, upon their own showing, were not entitled to recover; and requested the court so to decide, but the court refused.

The defendants, in support of the issue on their part, called J. D. Farnsworth, who testified that he took the receipt before mentioned from the constable for the rate-bill; that the selectmen made out no rate-bill for the town tax in 1828, and that none was delivered to Webb by the selectmen; but Webb had a state tax-bill of three cents on the dollar, the amount of the town tax, and he had carried out the amount of the town tax for 1828 in a column of

figures, and that he added it up and found it correct, and certified it, and he had no knowledge that either of the other selectmen ever saw it. He further testified, that at the time he took the receipt aforesaid, he made out a warrant for Webb, for the collection of said tax, but did not procure it signed by a justice of the peace. Webb took it, and said he would procure it signed, but witness did not know whether Webb ever did procure it signed.

CHITTENDEN,
January,
1835.

Charlotte
vs.
Webb&Newell.

The defendants, in further support of the issue on their part, produced the rate-bill for the state tax, certified by the said J. D. Farnsworth, and having upon it the name of Charles Grant, as one of the selectmen, above the name of the said Joseph D., selectman.

Charles Grant was then called a witness by the defendants, and testified that he did not sign it at the time it was made out, but could not tell when he did sign it—thought he did not sign it until after Nathaniel Newell sued Webb for taking his oxen, which was in 1830. On cross-examination, he said his impression was, he signed the rate-bill before Webb went off, which was proved to be in 1829.

The testimony here closed.

The defendants requested the court to charge the jury as follows:

1. That the plaintiffs cannot recover upon the bond against Webb and his surety, for not collecting and paying over the state tax, unless they prove that a rate-bill was made out by the selectmen for that tax, in due form of law, and certified by a majority of them, as the state tax, and delivered to Webb in due season, so that he could legally collect said tax.

2. That the plaintiffs cannot recover in this action the amount of the town tax of the defendant, unless they prove that the selectmen of said Charlotte, in due season, made out a regular rate-bill of that tax, and that the same was duly certified by a majority of them, and that they procured from a justice of the peace a legal warrant for the collection of said tax, and that they, or some of them, delivered said rate-bill and warrant to the said Webb in due season for collection.

3. That the plaintiffs can only recover nominal damages, unless they prove that the said Webb collected more money on said tax-bills than he paid over; for if Webb did not collect the tax of the inhabitants of said Charlotte, they ought not to recover of him and his bail.

6

CHITTENDEN,
January,
1835.
Charlotte
vs.
Webb&Newell.
4. That if the jury find that no rate-bill was made out by the selectmen, and certified by a majority of them, and delivered to the constable, Webb, with a legal warrant authorizing him to collect the town tax, the plaintiff cannot recover. The fact, that Webb himself, from his old state tax bill, made out the amount of the town taxes, and submitted it to J. D. Farnsworth, one of the selectmen, who added it up and found the amount correct, without certifying it as a regular tax-bill, will not entitle the plaintiffs to recover the town tax.

The court refused to charge the jury as requested by the counsel for the defendants, and among other things charged the jury, that the receipt of the constable, acknowledging the receipt of a rate-bill, was, in the absence of proof to the contrary, evidence that it was a legal one, duly certified by the selectmen, according to law; and that the evidence of Grant, as to when he signed it was loose and unsatisfactory. It was not necessary that the selectmen should procure a warrant signed by a justice of the peace, before they handed it over to the constable. The signature of the justice could be procured by the constable at any time; and if the jury find that Webb, the constable, took the warrant before it was signed, with an understanding that he was to procure some justice to sign it, the legal presumption is, that he did procure it signed in season to enable him to collect the tax. As it respects the state tax, the court say, if the jury find that J. D. Farnsworth, one of the selectmen, made a rate-bill and signed it, and delivered it to Webb, the constable, with the understanding that he was to procure the signatures of the other selectmen, the legal presumption is, that he immediately procured the name of Grant, the other selectman, to said rate-bill; and Webb ought not, at this late day, to be allowed to say it was not signed in due season by Grant, the other selectman, without satisfactory proof. And if the jury find that it was signed by Grant, the other selectman, in due season to avail the constable, the plaintiffs are entitled to recover.

To this charge the defendants excepted. The jury returned a verdict for the plaintiff. Exceptions were allowed and certified.

· *Maeck and Upham for defendants.*—On the plea of abatement, the first question is, whether it was good in substance; secondly, whether it was pleaded in good form; thirdly, if not formally well pleaded, whether the court ought, *ex officio*, from the matter before them, in the manner it was made known, to have quashed the writ.

1. The substance of the plea. The town of Charlotte are
plaintiffs in the suit. The writ is directed to and service made by
a member of the corporation. He was both a party and in inter-
est, and by express provisions of the statute, is prohibited from
serving the writ.—Stat. p. 64. The statute is imperative and the
law is founded in sound policy.

The plea then being good in substance, the next inquiry regards
its form. We contend the matter is well pleaded. Anciently
great strictness was required in pleas of abatement, but the rule in
modern times is relaxed, and the certainty formerly required is now
dispensed with. The court now puts a common sense construction
upon them. The beginning and conclusion of the plea both de-
note it to be in abatement, and both pray that the plaintiff's writ
may be quashed; and the body of the plea assigns the cause with
all reasonable certainty. The kind of service made by the officer
need not have been set forth, as the objection is to the power of
the officer to make any service at all. If he had power to make
service in one way and not in another, there would be force in the
objection; but having no power, it is immaterial how he attempted
to serve the writ. The objection that the defendant makes full
defence is of no importance. The " &c." now implies full or half
defence, according to the subject matter of the plea.—Gould on
Pleading, 31, 32. 8 Term Reports, 633. 2 Saund. 209, c. (n.)
Law. Pl. 92.

The plea was good as a motion, and it was the duty of the court
to have dismissed the suit on motion, though a parol one. The
following authorities fully sustain our position, and, moreover, es-
tablish the position, that even if the defendants plead an insuffi-
cient plea in abatement, which is overruled on demurrer, still the
court will, *ex officio*, dismiss the suit, and are bound to do so.—
11 Mass. Rep. 343. *Gage* vs. *Gaffman*, 11 Mass. Rep. 182.
14 Mass. Rep. 132—5 do. 362. 6 Peck, 271. Story Pl. 24, 25.
5 Conn. Rep. 140. *Essex* vs. *Holmes*, 6 Vt. Rep. 47. 10 Mass.
Rep. 176.

The plaintiff cannot insist, that it could not appear to the court
that the officer, who attempted to execute the writ was a party and
in interest. The writ was directed to the constable of Charlotte,
the service was made by the constable, and if made by any other
constable, it was certainly void. The law provides that constables
shall be inhabitants and freeholders of their respective towns. The
question, whether legal constable or not, cannot be controverted in
this case; and the plaintiffs having created him constable, the pre-

CHITTENDEN,
January,
1835.

Charlotte
vs.
Webb&Newell.

sumption is, that he is a legal one, and they would be estopped from denying it.

2. The bond was void on the face of it, and ought not to have been admitted as evidence. It was an official bond, and consequently, if the condition contained any thing not authorized by statute, not only such part of the condition is void, but the whole bond.—*Lyon* vs. *Ide*, 1 D. Chip. Rep. 46.

The statute makes the towns responsible for the neglect or default of the constable.—Stat. p. 420.

The town had no right to take a bond from the constable, with a condition extending further than they can be made liable. The condition of the bond extends further than the one prescribed by statute.—Stat. p. 420. No other person, however much he might suffer by Webb's official conduct, has any remedy against the town, except it was through the neglect or default of Webb. Suppose a constable were to serve process after the return day had expired, or to take property of A on an execution against B, is the town responsible to the defendant in the process in the first instance or to A in the second?

Again: The bond should either have been taken to the town, or to the selectmen by the name of the office, not in the names of the individuals exercising the office.—Stat. 420.

But if the bond may be considered good, taken to the selectmen, in the names of the persons exercising the office, the suit should be in their names. The legal interest resides in them, and the persons beneficially interested cannot sue.—Ham. Par. 11, 33, 313, 314. 10 Mod. 280. 2 Cranch, 308, 302.

There are cases of parol simple contracts, where the person beneficially interested may sue; but never in cases of deeds. Neither can he sue, though the obligee has made an express promise to him.. His remedy is of a higher nature, to wit, upon the bond in the name of the obligee.

The addition of "selectmen, &c." does not assist the plaintiff. It is a mere *discriptio personæ*.—6 East. 110. 9 John. 335. 8 Mass. 103.

This action on a bond so executed is not given to the plaintiff by the act of Nov. 6, 1817, Stat. 159. The act contemplates actions founded upon statutes, and where the pleader must necessarily count upon the statute. The right to take the bond is given by the statute, but the action is not founded upon the statute more than action in favor of endorsee against endorser is.

The receipt of the constable was improperly admitted in evi-

CHITTENDEN,
January,
1835.

Charlotte
vs.
Webb&Newell.

dence. If Webb had been sued alone, or they had been both joint principals, the rule might have been different. The admission of the deputy relative to his official acts binds the sheriff, because, say the authorities, he is a mere servant, and the sheriff has his bond to indemnify him. But Newell was only liable on Webb's default. To admit the admission of the principal to charge the surety, is placing the surety entirely in the hands of a dishonest principal, and opens a wide door for collusion between third persons and the principal to destroy the surety. A claim against a surety is always a matter of strict right on the part of the person making it. Equity is on the side of the surety. It has been decided, that the admission of the principal, in a good bond, that he had broken it, is not evidence against the surety.—Swift's Ev. 128. *Phoenix* vs. *Day*, 5 John. 412. *Abel* vs. *Torgue*, 1 Root. 502. *Bostwick* vs. *Lewis*, 1 Day, 33. *State Bank* vs. *Johns*, 1 Conn. Rep. 404. *Walker* vs. *Dubeney*, 1 Marshall.

The treasurer's extent was not admissible, without first laying the foundation for it, by showing that he had previously issued one against the constable, and the sheriff had returned it *non est inventus.*—Stat. 403, 404.

The plaintiff's evidence did not support the issue on the third and fourth pleas in bar, and the charge of the court relative to what evidence would support the issue on the above pleas, was clearly wrong. In the third plea, the issue was, whether the plaintiffs did deliver the warrant and rate-bill they averred they did in their declaration; and on the fourth plea, whether they delivered a rate-bill for the collection of the state tax. The proof was in excuse for not doing it, to wit, that the officer agreed to get them himself. This was not proving the point in issue, and the court ought so to have told the jury.

Again: The court ought to have charged the jury, that the rate-bills should have been signed by all, or at least a majority of the selectmen.—*Townsend* vs. *Gray*, 1 D. Chip. 127.

The court erred in instructing the jury that Webb got the other selectmen to sign the rate-bills and the warrant. The only ground for the presumption was, that Farnsworth swore he agreed to it. A presumption is an inference from facts proved that other facts do exist, and results from their connection with each other.—Sw. Ev. 136. Here was no ground for the presumption. It might as well be presumed a note was paid when it fell due, because the party had promised to pay it. The fact was capable of positive proof, and in such cases, if the party chooses to rely upon pre-

CHITTENDEN,
January,
1835.

Charlotte
vs.
Webb&Newell.

sumptive proof, he is not entitled to recover.—Swift's Ev. 138.- The selectmen of 1828 were all examined, and denied signing the bills of 1828, or during the time Webb was elected constable; consequently the contrary could not be presumed.

The charge relative to Grant's testimony was wrong, and misled the jury. Though his testimony was unsatisfactory, as to the precise moment when he signed the bill, it fully appeared by his testimony that he did not sign it until after the year had expired that Webb was elected constable.

The admission of the evidence relative to Webb's agreement to get the warrant and rate-bill signed, and the charge of the court on the several points in reference thereto, were wholly wrong, considering Newell was but a surety. He was only liable in case Webb made default, and being surety, plaintiffs must show a full and literal performance on their part to hold him. The plaintiff's duties are prescribed by law, entered into the contemplation of the parties when the bond was signed, and if by any act of theirs his risk has been increased, he is discharged.

The court ought to have charged the jury to find only nominal damages under the evidence. It did not appear that the rate-bills have ever been collected. They belong to the town, and the town is authorized to collect them. The surety has no such right.

*C. Adams contra.*—1. As to the plea in abatement.

(1.) Pleas in abatement, as they delay the trial of the merits, are not regarded by courts, and the greatest accuracy and precision are required.—1 Chit. Pl. 443. Law. Pl. 107.

(2.) In this plea defendants have made what is called full defence, and it is a rule in pleading, that defendant cannot plead in abatement after full defence.—1 Chit. 414. 1 Tidd, 560. Law. 92.

(3.) There must be a prayer of judgment.—3 Bl. Com. 303. 1 Chit. 451. Law. 107–9. 2 Saund. 209.

In this case defendants say the writ *ought* to abate, but do not pray judgment of it.

(4.) The interest of the constable is an inference of law, growing out of certain facts, which facts should be stated so that they might be traversed. He was not necessarily interested by being an inhabitant, for he might have no list or rateable property.

(5.) The constable is not necessarily an inhabitant. There is no law requiring it, and from the authority given to towns, *to agree with some suitable person*, it is rather to be inferred that his residence might be immaterial.—Stat 411, sec. 6.

(6.) If the constable was an inhabitant and interested, the facts <span style="float:right">CHITTENDEN,<br>January,</span> should have been pleaded in such a way that plaintiffs could have <span style="float:right">1835.</span> traversed them.   But in this case they are not asserted nor alluded <span style="float:right">Charlotte<br>vs.</span> to, except argumentatively. <span style="float:right">Webb&Newel</span>

2. As to the pleas in bar.

(1.) On the first issue of *non est factum*, it is not perceived that any question can arise, the bond being in due form.

(2.) The same remark may be made as to the second issue.

(3.) As to the third issue, we contend that the rate-bill was *a legal bill*.   It contained the names of all the inhabitants, with the sums in which they were assessed, with the proper certificate of the selectmen, as the constable received the rate-bill and warrant, and promised to get them signed.   But the receipt is conclusive, and defendants are not at liberty to oppose it.

(4.) As to the fourth issue, it appeared by plaintiff's showing, that they delivered Webb the treasurer's warrant for the collection of the tax ; that Farnsworth, one of the selectmen made out a rate-bill and certified it; that Webb took it and promised to hand it to the other selectmen to sign ; that an extent had been issued against the town, which they paid.   On this evidence it is contended that the legal presumption is, that the rate-bill was signed by the other selectmen ; that whether signed or not, is of no importance, unless defendants show that some one refused to pay his tax ; and in that event, it would be sufficient if plaintiffs procured the other selectmen to sign in time for the collection of the tax.

The showing on the part of the defendant, instead of rebutting the presumption, strongly corroborates it.   The rate-bill, when produced had on it the names of Farnsworth and Grant; and the testimony of Grant clearly shows that it was signed in due season to avail Webb.·

The court correctly refused the motion for a non-suit, because the plaintiffs have made out their case, and because court will not order a non-suit against will of plaintiff.—*French vs. Smith*, 4 Vt. Rep. 363.

Plaintiff's right to damages is not to be limited to amount collected by constable.

It was not necessary to show the extent issued against the constable.   The issuing of the extent is, *quasi*, a judicial act ; and in favor of judicial proceedings, it is to be presumed they are founded on proper evidence.   The extent against the town is, therefore, of itself, sufficient evidence that an extent had previously issued against the constable.

CHITTENDEN,   The opinion of the court was delivered by
January,
1835.       WILLIAMS, Ch. J.—The questions in this case arise both from
Charlotte    the judgment rendered by the county court on the plea in abatement,
vs.
Webb&Newell. and the decisions made at the trial of the issues joined to the jury.

The original writ was served by a constable of the town of Charlotte. It is contended for the defendants, that the court, for this cause, should have abated the writ, on motion and without plea. Where there is a want of jurisdiction in the court, or where the writ is itself a nullity, so that a judgment thereon would be incurably erroneous, it would be the duty of the court, on this being shown to them, whether by plea, motion, or otherwise, to dismiss the writ; or, as it is said in some cases, to abate it *ex officio*. The object of the service of a writ is primarily for the purpose of notice to the defendant to appear. He may appear and answer, and by that appearance or answer, waive any advantage which might otherwise have been taken of any irregularity or defect in the service. If he intends to insist upon any advantage, in consequence of an irregular or defective service, he must set forth the irregularity or defect, in a plea framed according to the established rules of pleading. The inhabitants of a town are not considered as the parties to a suit in the name of their town, so far that they can either release or control the suit. They were excluded from being witnesses by the common law, on the score of interest alone. Hence, while a rated inhabitant was excluded as a witness in such suit, an inabitant not rated was admitted. An inhabitant who has no interest in the event of a suit, for or against the town, may therefore serve a writ to which the town is a party. At all events, the fact that a writ was served by an inhabitant is not of itself sufficient to induce the court, at any stage of the proceedings, to abate or dismiss the suit on motion. The irregularity in the service of the writ in this case was the proper subject of a plea in abatement, and unless the plea can stand the test of a demurrer, the county court rightly awarded a *respondeas ouster*. The plea is obviously defective and informal. It is not directly averred that the constable was interested in the suit, but his interest is only inferred by way of argument, from the fact of his being an inhabitant, and it is not distinctly averred that he was an inhabitant. There is no prayer of judgment, either in the beginning or conclusion of the plea. Indeed, the defects in the plea are so obvious, that it was not much insisted on in the argument that it could be sustained as a regular plea in abatement. There is, therefore, no error in the judgment of the county court on the plea in abatement.

CHITTENDEN,
January,
1835.

Charlotte
vs.
Webb&Newell.

Several questions have been raised on the determinations of the county court, made at the trial. It is argued, that the receipt executed by the collector, Webb, was not admissible in evidence in this suit. We think, however, that these receipts are something more than the mere verbal admissions of a person. They may be considered as the written evidence of a particular fact, intended at the time as the evidence to prove that fact whenever it should come in question. Like receipts for writs or executions, they are designed to supercede the necessity of preserving any other testimony as to the fact of delivery and receiving the rate-bill and warrant, and are proper evidence as well against the collector as against his sureties.—In the case of *Middleton and al.* vs. *Milton,* 10 Barn. and Cres. 317, an entry made by a deceased collector of taxes in a private book, kept by him for his own convenience, whereby he charged himself with the receipt of money, was held to be evidence of the receipt of the money in an action against his surety, on a bond executed to secure the due payment of the taxes received by the collector.

It appears that an extent, which had issued against the inhabitants of the town of Charlotte, and which had been paid by them, was admitted in evidence, though objected to by the defendants. This was certainly admissible for several purposes. It was evidence of the amount paid by the plaintiffs, and that the payment was not a voluntary payment. The regularity of the previous proceedings to be taken before issuing the extent could not be questioned by these parties in this suit, but their regularity was to be presumed. An extent is in the nature of a *scire facias,* issued by a public officer. The recital therein was, to these parties, at least *prima facie* evidence that the proceedings were had agreeable thereto.

The evidence as to the two rate-bills, it is contended, was also insufficient, or improperly received, to prove the fact of the delivery of those rate-bills, together with the warrant for the collection of the town tax, to the collector. The receipt executed by the collector, admitted as above mentioned, alone, and certainly when taken in connection with the testimony of Joseph D. Farnsworth, as detailed in the bill of exceptions, was *prima facie* evidence of the regularity of the rate-bill. The object of a rate-bill is only to ascertain the amount, or the particular tax, due from each individual, and this is ascertained by mere calculation. The tax was voted on the list of 1827, and if the collector had any other rate-bill containing the list of that year, this tax could as well be calculated

7

CHITTENDEN,
January,
1835.

Charlotte
vs.
Webb&Newell.

and carried into a column of figures against the names of the individuals in that rate-bill, as in any other way. But further: the rate-bill was by the receipt proved to be in the hands of the defendant, Webb. If there was any such irregularity or defect in the rate-bill as would exonerate the defendants, or excuse the collector from collecting the same, he might and should have produced the same in evidence.

The evidence also in relation to the rate-bill for the state tax was entirely satisfactory. On the receipt of the warrant from the state treasurer, it becomes the duty of the select men to make out a rate-bill. Such a rate-bill was made out and signed by one of the selectmen, and delivered to the defendant, Webb, who agreed to procure the signatures of the other selectmen. It was in evidence that it was signed by Mr. Grant, another selectman, although there was some uncertainty as to the time when. But from the rate-bill produced, apparently regular, taken in connection with the testimony, it sufficiently appeared, that the rate-bill was made out in season, or that defendant, Webb, who was collector, was under no embarrassment in the collection of the tax, from the default or neglect of the town or of the officers thereof. The charge of the court to the jury upon this part of the case has been objected to, inasmuch as the judge told the jury, that the legal presumption was, from the facts stated, that the signature of the other selectman, Mr. Grant, was immediately procured to the rate-bill. On this point it may be observed, that, from the evidence in relation to the undertaking of the collector to procure the signature of the other selectman, after he received the rate-bill certified by one of them, it was in a great measure immaterial when he caused the same to be perfected by the signature of the other. But the charge on this point is not liable to the objection raised. The language made use of was not, that this presumption was one which the jury were bound by the rules of law to draw; but was, only, that the legitimate and fair presumption from the facts in evidence was, that this signature was immediately procured. The defendant, Webb, had engaged so to do, and it was to be presumed, that in this particular, when there was nothing to lead to a doubt, he had acted agreeable to his undertaking.

Upon the subject of damages, it is only necessary to observe, that in consequence of the neglect of the collector, the town had been subjected to the payment of the amount of the whole of the state tax, and the town tax had not been fully paid to them. The correct rule of damages was, therefore, the whole amount of the

taxes, or what they had been compelled to pay. The collector is empowered yet to collect any arrearages due from individuals. The object in taking the bond was, to ensure a punctual and faithful performance of the duties required of the collector. The plaintiffs may therefore resort to this bond, and are not under obligation to endeavor to ascertain what remains uncollected, or take any measures to collect from the several individuals, if there are any who have neglected to pay their tax to the collector.

The result of the whole is, that the judgment of the county court must be affirmed.