NORTHUMBERLAND *v.* COBLEIGH *& a.*

A collector's bond, when specially declared on, may be given in evidence without proof of its execution, unless the signatures are denied, as provided in the 46th rule of court.

It is not necessary that there should be as many separate seals annexed to an instrument as there are signers. Two or more signers may adopt one seal.

In a suit upon a collector's bond, it is sufficient to show that the select-men who assessed the taxes were officers *de facto*.

If, in a suit upon his bond, the collector would exonerate himself upon the ground that the taxes, or any of them, were illegally assessed, the burden of proof is upon him to show it.

Entries upon the books of the plaintiff town made at a settlement with the collector in his presence and with his assent, also lists of the uncollected taxes taken off in his presence, are admissible in a suit upon his bond against him and his sureties.

C. was collector of taxes assessed in the town of N. in 1870, 1871, 1872, and 1874. In 1877 the selectmen took from him the warrants and lists, and brought a suit against him and his sureties to recover for the uncollected taxes. *Held*, that the plaintiffs might show why they took away the warrants and lists, and what was the purpose of the selectmen in so doing; also, that the action of the selectmen was not evidence of a waiver of any breach of the collector's bond, nor of the requirements in the warrant to pay over the money at certain times therein specified; also, that it would not excuse the collector for his default in not collecting the taxes as required by the warrant.

A vote of a town, that "the selectmen instruct the several collectors of the town to collect all back taxes not collected, to pay town expenses for the ensuing year, as soon as possible, so as not to press the people too much," is not evidence of a waiver of any breach of the condition of the collector's bond or of the requirements in the warrant to collect and pay over the money at the times therein specified, nor will it ex-cuse the collector for his default in not collecting the taxes as required by his warrant.

The neglect of the selectmen to issue an extent against the collector is not a waiver of any breach of the conditions of his bond, nor will it bar the town from recovering of the collector in a suit upon his bond if he has neglected to collect and pay over the taxes in his list within the time limited in the warrant.

DEBT, on four bonds given by Charles Cobleigh as principal, and Wayne Cobleigh as surety, and conditioned for the faithful per-formance by Charles of his duties as collector of the plaintiff town for the years 1870, 1871, 1872, and 1874. Plea, *non est factum*, with a brief statement of defence as follows: 1, performance; 2, that the plaintiffs have not been damnified; 3, that if damnified, it has been through their own wrong, and by their own default; 4, that so far as Charles has neglected to perform the duties of col-lector, the neglect occurred through the direction and consent of the plaintiffs; that they prevented him from the performance of his official duties, and released him from the performance of the

conditions of the bonds in so far as the same have not been fully performed.

The defendants excepted to the admission of the bonds in evidence, without proof of their execution. They also excepted to the bond of 1874, which had but one seal upon it, claiming that the absence of another seal should be explained, or that it must appear affirmatively that each signer adopted the seal thereon as his own. The presiding judge was of opinion, from an inspection of the bond, that there was originally another seal upon it. The defendants excepted to the ruling, that it was sufficient to show that the persons who appointed the collector and assessed the taxes committed to him for collection were selectmen *de facto ;* also, to the refusal of the court to rule that the plaintiffs must show a legal assessment of the taxes committed to the collector; also, to the admission in evidence of certain entries upon the town books of settlements made with Charles, of taxes abated, of credits given, and charges made against him, there being evidence tending to show that they were made in his presence, and with his knowledge and assent; also, to the admission of lists of the uncollected taxes made by the selectmen in his presence at a looking over with him in March, 1877; also, to the refusal of the court to order a nonsuit.

The evidence tended to show that April 2, 1877, the selectmen went to the house of Charles and did not find him at home; that the warrants and tax-lists were delivered to them by his mother at their request; that they took them away and put them with the town's papers, and have kept them ever since; and that they caused this suit to be brought April 7, 1877, before Charles had returned home. The defendants claimed that the action of the selectmen in taking away the warrants and lists excused the collector for not collecting the taxes. For the purpose of explaining the action of the selectmen, the plaintiffs were allowed to show, subject to exception, that they took the warrants and lists in consequence of information that Charles had left the state; and the selectmen were allowed to testify, subject to exception, what their intention was in taking the warrants and lists. On this point Wood, one of the selectmen, testified, "We went up to get the books, because we thought if he left the books there they ought to be looked after." Eames, another of the selectmen, testified, "I went up there to see the collector, because I believed he was going out of the country : I went to have him settle, and hand over what he had collected, and show his hand and how he stood." There was no claim that the collector had not paid to the town all the money collected; but the plaintiffs claimed that, by reason of the neglect of Charles to collect and pay over the taxes upon his lists according to the warrants, he was liable. There was no refusal on the part of the plaintiffs' selectmen to abate any of the uncollected taxes.

The defendants offered to show, that of the taxes uncollected

April 2, 1877, there were large sums assessed against a great number of persons, which were then, and always had been, uncollectible; also, that at the annual meeting in March, 1876, the town voted that "the selectmen instruct the several collectors of the town to collect all back taxes not collected, to pay town expenses for the ensuing year, as soon as possible, so as not to press the people too much;" and that by reason of that vote Charles was unable to collect the taxes which remained uncollected April 2, 1877, and that it was not possible to collect them "without pressing the people too much." This evidence was offered to show a waiver of any breach of the condition of the bonds, and a waiver of the requirements of the warrants to pay over the money at the times specified therein. The defendants excepted to the exclusion of this evidence; also, to the ruling of the court that the acts of the selectmen in taking the warrants and lists in April, 1877, would not excuse the collector for his default in not collecting the taxes as required by the warrants.

The defendants excepted to the refusal of the court to rule that the plaintiffs, by reason of the neglect of the selectmen to issue an extent against the collector, had waived any breach of the condition of the bonds for not paying over the money, and were barred from any recovery on the bonds, inasmuch as he had paid over all that he had collected; also, to the refusal of the court to rule that the neglect to issue an extent was a waiver of the breach of the condition to collect and pay over within the time limited in the warrant.

A verdict was taken by consent, for the plaintiffs, for the amount of the uncollected taxes, subject to the opinion of the whole court.

*Ray, Drew & Jordan* and *Carpenter*, for the defendants.

*W. & H. Heywood* and *Ladd & Fletcher*, for the plaintiffs.

SMITH, J.  1. The bonds being specially declared upon, and there having been no denial of the defendants' signatures within the first four days of the first term, the signatures are regarded as admitted. No formal proof of their execution was therefore required. 46th Rule of Court.

2. There may be a less number of seals than signers to an instrument. One seal may serve for all; and where the bond contains the usual attestation clause, "sealed with our seals," the law will intend that all the signers adopt one seal. *Pequawkett Bridge* v. *Mathes*, 7 N. H. 230; *Tenney* v. *Lumber Co.*, 43 N. H. 343.

3. It is sufficient, in cases where merely third parties are interested, to show that a selectman or other officer acted as such, or was an officer *de facto*. It is a general rule that the validity of the acts of an officer *de facto* cannot be called in question indirectly in a suit to which he is not a party. *Tucker* v. *Aiken*, 7 N. H.

113; *Carr* v. *Dodge*, 40 N. H. 403; *Prescott* v. *Hayes*, 42 N. H. 56, 58; *Roberts* v. *Holmes*, 54 N. H. 560.

4. Where a party proceeds in case for an illegal assessment, he must prove it illegal: there is no presumption that it is illegal. *Perry* v. *Buss*, 15 N. H. 222. But where acts are of an official nature, or require the concurrence of official persons, a presumption arises in favor of their due execution. Bro. Max. 944; *Shackford* v. *Newington*, 46 N. H. 415, 420–422. The present is a case where the maxim, that all acts are presumed to have been rightly and regularly done, applies. If the collector would exonerate himself upon the ground that the taxes were not legally assessed, he should point out in what respect the assessments were illegal. *Charlotte* v. *Webb*, 7 Vt. 49. The defendants' proposition would require the plaintiffs to show the age, residence, and citizenship of each person named in the list, the due voting of school-district, town, county, and state taxes, and the existence and ownership of all the different descriptions and various articles of property upon which the assessments were made. If any of the persons assessed were not liable to assessment, or if, on account of their death, poverty, or absence, or for other sufficient reasons, their taxes could not be collected, such facts would be good causes for abatement; and it would be the duty of the selectmen (the collector not being in fault) to abate such taxes. Gen. St., *c.* 53, *s.* 10. It does not appear in this case that the selectmen have refused to abate taxes where there were sufficient reasons therefor.

5. As the entries were made in the presence and with the knowledge and assent of the collector, they were evidence in the nature of admissions, and were admissible as showing how far he had complied with the condition of his bond in collecting the taxes committed to him. For the same reason the lists of uncollected taxes, taken off at the looking over in March, 1877, were admissible.

6. We do not see any ground upon which the motion for a nonsuit could have been granted, and none has been suggested.

7. The several tax-lists had been in the collector's hands from three to seven years, according to the year in which they were issued. The collector was consequently in arrears from two to six years in his collections. The removal of the lists and warrants in April, 1877, did not affect any liability previously incurred by nonperformance of his duty. It was his duty to collect the taxes promptly, within the year, and to apply seasonably for abatements of such as were uncollectible. Whether the taking away of the lists and warrants operated as a removal of the collector from office or not, neither he nor his sureties were thereby discharged from existing liability for any of his acts or negligence. Gen. St., *c.* 39, *s.* 11. There was no offer to show that the selectmen had refused to abate any taxes that ought to have been abated, nor to explain the collector's failure to obtain an abatement; and the legal inference is, that the deficiency was due to his negligence prior to April, 1877.

8. The testimony of Wood and Eames was admissible as explaining their conduct in taking away the books, if it was material for the defendants to put in evidence of that fact (*Carter* v. *Beals*, 44 N. H. 408); and if inadmissible it was immaterial, and not likely to prejudice the defendants.

9. The town had no power to make abatements of taxes, or to delay or suspend their payment. The power of abatement is lodged with the selectmen, acting under the responsibility of an official oath. The collector's powers and duties are defined by statute, and are ample for the prompt collection of his list. The duties of the selectmen are confined to the proper assessment of the taxes, the delivery of the list with a proper warrant to the collector, and to the abatement of taxes, upon seasonable application, for sufficient reasons. To insure the faithful performance of his duties, the collector is required by statute to give a bond with sureties. His stringent powers for enforcing prompt collections by arrest or distraint were never intended to be weakened or undermined by the passage in town-meeting of a vote directing the collection of delinquent assessments so fast only as can be done with convenience and without pressure. The statute affords no warrant for such a vote, and the vote is inoperative.

10. Selectmen have power to issue an extent when there is danger that the collector may abscond, or be unable to pay the state and county taxes. Gen. St., *c.* 59, *s.* 5; *Kimball* v. *Russell*, 56 N. H. 488. If the plaintiffs cannot recover on the bonds for the uncollected taxes because no extent was issued, then it matters not how great the collector's neglect is, provided he pays over what he collects. He might neglect to make any collections, and so have nothing to pay over; and, if the defendants' position is correct, he would not be liable on his bond, because the neglect of the selectmen to issue an extent is a waiver of any breach in the condition of the bond. The bond required of the collector is for the faithful discharge of the duties of his office, which includes not only the prompt payment of the taxes, when collected, to the officers designated in the warrant, but the prompt collection of all the collectible taxes assessed. The power conferred upon the town treasurer to issue an extent against the collector is not the only remedy which the statute gives to enforce the collection and payment of the tax-list. If that were so, then the provision of Gen. St., *c.* 39, *s.* 4, requiring the collector, within six days after after his appointment or election, to give bond, with sufficient sureties to the acceptance of the town or selectmen, for the faithful performance of his official duties, and in default that the office shall become vacant, is meaningless. The remedy by extent is merely cumulative. *Middlebury* v. *Nixon*, 1 Vt. 232. Because it is a harsh but expeditious remedy, it was designed to be enforced when the slower process of a suit on the bond might fail to afford opportune relief.

The amount of the verdict is immaterial. The court will render

judgment at the trial term for such amount as is equitably due. Gen. St., *c.* 213, *s.* 9. Before such judgment is rendered, application can be made to the selectmen, in behalf of the collector, for an abatement of the taxes which he contends were uncollectible. The amount equitably due will be determined upon a consideration of all material facts bearing on the question of equity.

*Exceptions overruled.*

STANLEY, J., did not sit: the others concurred.