Rockingham, ⎱
June 29, 1918. ⎰

### CEYLON SPINNEY *v.* SEABROOK & *a.*

A warrant to the collector of taxes authorizing an arrest for the non-payment of taxes is a civil, not a criminal process.

For the support of one committed to jail upon such warrant the jailer under P. S., c. 60, ss. 8, 9; Laws 1913, c. 82, s. 5, cannot recover against the county, the town or the collector, if no bond to indemnify has been given.

A jailer is not bound to receive a poor prisoner in a civil action and incur the expense of his support without indemnity; and if he receive him without security the jailer's only remedy is against the prisoner.

ACTION AT LAW, against the town of Seabrook, the county of Rockingham and one Perkins, a special tax-collector of the defendant town, brought to recover certain prison charges and board from October 11, 1913, to December 18, 1914, of a delinquent tax-payer of Seabrook, who was committed to the county jail, of which the plaintiff was the jailer, by Perkins acting under a warrant given by the selectmen of the town for the collection of taxes. No bond for the prisoner's board in jail was demanded by the plaintiff and no bond for that purpose was given. The board was furnished by the plaintiff, for which he has received no pay. The tax-payer upon taking the poor debtor's oath was discharged. The county and the town moved for directed verdicts in their favor. Perkins moved that the action be dismissed as to him. Without ruling on these motions, *Allen,* J., transferred the case from the October term, 1917, of the superior court.

*Ernest L. Guptill* and *Ralph C. Gray,* for the plaintiff.

*William H. Sleeper,* solicitor, for the county.

*Page, Bartlett & Mitchell,* for the town and for Perkins.

WALKER, J. By section 8, c. 60, P. S. (reënacted in s. 5, c. 82, Laws 1913), it is provided that: "For want of goods and chattels whereon to make distress, the collector may take the body of any person neglecting or refusing to pay the tax assessed against him, and commit him to the common jail." Section 9 provides that, "the jailer shall receive and detain such person in his custody until he pays such tax, cost of commitment, and charges of imprisonment, or until he is otherwise discharged by due course of law." A war-

rant to the collector of taxes authorizing an arrest for the non-payment of taxes is a civil, not a criminal process. The purpose of the arrest and of the commitment to jail is not to punish the prisoner as a criminal for failure to pay the tax assessed against him, but to compel the payment of the tax as a civil obligation. For the accomplishment of this purpose, "Every collector, in the collection of taxes committed to him and in the service of his warrant, shall have the powers vested in constables in the service of civil process." P. S., c. 60, s. 1; Laws 1913, c. 82, s. 6. That the collection of taxes is deemed by the legislature to be a civil process is also recognized in section 17 of the same chapter, where it is provided that a tax may be "collected by suit at law or bill in equity." The imprisonment in jail of one who fails to meet his tax obligation is merely one means of collecting the tax, in the same way that the imprisonment of a debtor on execution is one means of collecting the debt. In *Butler* v. *Washburn*, 25 N. H. 251, and in *Gordon* v. *Clifford*, 28 N. H. 402, an arrest upon a tax-warrant was treated as having been made in a civil proceeding; and no case holding a contrary doctrine has been called to our attention.

The contention, therefore, that the county is liable for the board of the prisoner while in jail, assumes that such liability may exist when the commitment is made in a civil suit; for there is no statute explicitly imposing that burden upon the county in proceedings for the collection of taxes. If there is such a liability it can only be derived from the general statute providing for the support of prisoners in jail. But that statute (P. S., c. 282, s. 4) is as follows: "Every jailer shall provide each prisoner in his custody with necessary sustenance, . . . and the county commissioners shall allow him, out of the county treasury, a reasonable compensation for the support of all prisoners confined on criminal process." That the county under this statute is not liable for the board of prisoners confined in jail on civil process, is so obvious as to require no argument; and such has been the purport of the decisions on this subject. *Amherst* v. *Hollis*, 9 N. H. 107; *De Comcey's Petition*, 22 N. H. 368; *Plymouth* v. *Haverhill*, 69 N. H. 400; *Locke* v. *County*, 71 N. H. 208. In the absence of statutory authorization no reason is apparent for a different conclusion whether the imprisonment is for the collection of a tax or the collection of an ordinary debt. While an action at law ordinarily does not lie against a county (*Day* v. *County*, 77 N. H. 532), the question of law as to the liability of the county has been considered as though it had been regularly presented as a claim.

Nor is it apparent why the collector should be liable. He committed the prisoner in the execution of his warrant, which authorized him to proceed in that way in the attempt to collect the tax. Like a sheriff in committing a defendant upon an execution authorizing the act, he incurred no liability for the prisoner's support in jail. *Stevens* v. *Merrill*, 41 N. H. 309. That was a matter in reference to which he could exercise no control, and for which he could not be held responsible under the statute, which provides that a collector of taxes shall not be liable to any suit, "for any cause whatever except his own official misconduct." P. S., c. 60, s. 16. *Kelley* v. *Noyes*, 43 N. H. 209. Acting as a public officer (*Winchester* v. *Stockwell*, 76 N. H. 193) he incurred no liability for the board of the prisoner.

The town of Seabrook in its private capacity did not authorize or direct the arrest and imprisonment of the delinquent tax-payer. The selectmen in issuing the tax-warrant to the collector did not act as the agents of the town. It had no control over them in the performance of that duty, which was imposed upon them, and not upon the town, by the statute, P. S., c. 59, s. 7. The town had no more right to instruct the selectmen to issue or not to issue the warrant or to direct the collector how to execute the warrant, than it has to abate a tax (*Hampstead* v. *Plaistow*, 49 N. H. 84, 97), or to pass a vote in town meeting "directing the collection of delinquent assessments so fast only as can be done with convenience and without pressure." *Northumberland* v. *Cobleigh*, 59 N. H. 250, 255. In an action for the recovery of a tax it was said in *Canaan* v. *District*, 74 N. H. 517, 536: "The plaintiff as a town in any capacity has no control over the questions involved in this tax. It cannot by town vote direct whether the property in question should be assessed for taxation or not, or determine its value. By similar action it could not authorize this suit. It has no control over it. . . . Although named as plaintiff, the town of Canaan is in no sense a party to the controversy, which is between the state in the exercise of its taxing power and the taxpayer defending." "The taxes collectible under the statute are in no sense debts owed to the town as a corporation, but to the public." *Winchester* v. *Stockwell*, *supra*, 194. If the defendant town had passed a vote directing the collector to arrest the delinquent tax-payer and commit him to jail upon his neglect to pay the tax, the vote would be unauthorized and void, and the town would incur no liability thereunder for the acts of the collector in making the arrest, or for the expense incurred by the jailer in furnishing board to the prisoner. The town, in the absence of

any affirmative action in the premises, and in the absence of any statutory duty imposed upon it in reference to prison charges, cannot be held liable in the present case. It has no such interest in proceedings for the collection of taxes that it can be deemed to be in the position of a plaintiff in an action for the recovery of a debt. *Canaan* v. *District, supra.* But if this conclusion were wrong, or if it should be assumed that the town was the moving party in the proceedings resulting in the arrest and imprisonment of the taxpayer, it would only be liable to the jailer, if at all, for the prison charges upon a bond given for their payment. In P. S., c. 235, ss. 11, 12, it is provided that "No person committed on civil process shall be detained in prison for the nonpayment of prison charges, except in actions of trespass, case for torts, and prosecutions for bastardy; but such charges shall be a debt against the prisoner"; and in section 12 that "the person at whose suit any person is committed to jail," except in the above mentioned cases, "shall give bond to the jailer, with satisfactory surety, or such as may be approved by a justice, to pay the prison charges." In either of the excepted cases, if no bond is furnished, the prisoner, under section 13, may be "released by order of the supreme [superior] court or of a justice thereof." It is significant that there is no provision that the plaintiff shall be responsible for the prison charges if they are not paid by the prisoner. The plaintiff is not directly liable for them. They constitute a debt against the prisoner. The plaintiff's liability arises only upon his giving the required bond for their payment.

It was provided in R. S., c. 199, s. 12 that the plaintiff in a civil suit, causing the imprisonment of the defendant, shall give a bond to the jailer "to pay the prison charges in case of the prisoner's inability; otherwise such prisoner shall be discharged." This applied in all civil suits; the exceptions mentioned in the present statute above quoted were not introduced until 1845. Laws 1845, c. 237. In 1844, *Harris* v. *County*, 15 N. H. 81 was decided, in which it was held that a bastardy proceeding is not a criminal prosecution and that the county is not liable for the support of the prisoner in jail in such an action, as it would be in a criminal case. In concluding the opinion the court say: "As Colby was confined on process issued in a civil suit, it was the duty of the complainant to tender such a bond as the statute requires. The gaoler might have discharged Colby, if he had seen fit so to do; but as he did not do this, his compensation for the prisoner's support is a matter between the prisoner and himself, with which the county has nothing to do." In the revision of

1867 the statute in question took its present form, omitting the words "otherwise such prisoner shall be discharged." G. S., *c.* 221, *s.* 12. This change was regarded by the commissioners as verbal merely, and not as affecting a modification of the law. It was probably considered that, if the bond was not furnished, a discharge of the prisoner would be the logical result, without the use of express language to that effect. *Harris* v. *County*, therefore, is a direct authority for the proposition that if a bond is not furnished for the prison charges in a civil suit, not included in the exceptions introduced in 1845, the jailer, who might have discharged the prisoner but saw fit to hold him, can only look to him for compensation for his board while in jail.

While it is unnecessary in this case to decide what relief the jailer might have in case of a defendant committed to his custody in an action of trespass, or an action of tort, or a prosecution for bastardy, which are excepted from the operation of *s.* 12, it may be suggested that when no bond is given and when his claim for board against the prisoner is worthless on account of the prisoner's poverty, it might be the duty of the overseers of the poor of the town in which the jail is located to provide for his support in accordance with the provision of *s.* 1, *c.* 84, P. S. In *Amherst* v. *Hollis*, 9 N. H. 107 it was held that a prisoner confined in jail upon an execution, may be a pauper within the meaning of the statute then in force for the relief of the poor, which is in effect the same as the present statute, and that it is the duty of the overseers of the poor of the town in which the jail is located to relieve him. The court say that "imprisonment for debt certainly does not furnish a reason why a person should not be relieved, if poor and unable to maintain himself." It might be added that it is also no reason why the expense of maintaining the prisoner should be imposed upon the jailer, or why in the absence of a bond for his protection in supporting the prisoner or other contractual obligation, he should be permitted to hold the plaintiff, authorizing the commitment, responsible for the expense which is directly chargeable to the prisoner.

In this view of the legislative purpose, the argument that in a case like the present one the county or town is liable, because it is unreasonable to assume the legislature intended to make the jailer liable, is not of convincing force or logically persuasive. It is not evidence that the legislature intended that some other party, not specifically designated in the statute should be held liable. The jailer may protect himself: if he does not, as was said in *Harris* v. *County*, *supra,*

his compensation "is a matter between the prisoner and himself." That burden is not imposed upon the jailer. He is not bound to receive a poor prisoner in a civil action and incur the expense of his support without some indemnity therefor. But if he does receive him and supports him in jail without security for the prison charges, or without aid from the overseers of the poor, his only remedy is against the prisoner alone, who is primarily liable.

Upon the facts of the reported case the order must be

*Claim against the county disallowed: judgment for the other defendants.*

YOUNG and PEASLEE, JJ., dissented: the others concurred.