COÖS.

---

SPAULDING *v.* NORTHUMBERLAND.

The plaintiff agreed to indemnify the town against loss if they would release certain goods attached in a suit upon a collector's bond and permit him to satisfy an execution, which he held against one of the defendants in that suit, by levy upon the goods so released. The town having obtained judgment, levied their execution, by advice of counsel, on the homestead place of one of the defendants, disregarding a demand that a homestead be set out therein, whereby the whole levy failed. After this levy, the selectmen, against the plaintiff's objection, gave up to the collector the tax-lists and warrants, which they had before held as security for the default of the collector (upon which there were sufficient collectible taxes due to satisfy the remainder of their execution), to be collected for the benefit of his sureties. *Held*, that the plaintiff was not entitled to an injunction to restrain the town from proceeding with a suit at law to enforce performance of the indemnity agreement.

BILL IN EQUITY, for an injunction to restrain the further prosecution of an action at law upon the plaintiff's agreement to indemnify the town of Northumberland against loss on account of releasing an attachment. Facts found by the court.

About the first of April, 1877, Charles Cobleigh, collector of taxes of Northumberland for the years 1870, 1871, 1872, and 1874, being in default in the performance of his duties as collector, went away out of the state with no definite intention as to returning, leaving his tax-lists and warrants with directions that they should be delivered to the selectmen if they called for them. The selectmen, understanding that Cobleigh was in default and that his return was uncertain, called for and took possession of the tax-lists and warrants April 2, 1877, and April 7, 1877, caused two suits to be commenced upon the collector's official bonds,—one against Charles Cobleigh, Wayne Cobleigh, and W. A. Little, and the

other against Charles Cobleigh and Wayne Cobleigh,—and in both
suits an attachment was made of all the real and personal estate
of Wayne Cobleigh.   At that time the board of selectmen con-
sisted of the plaintiff, John Eames, and Frank E. Wood.   After
an absence of thirteen days Charles Cobleigh returned, and the
selectmen offered him the tax-lists and warrants, and asked him
if he was willing to take them and collect the taxes uncollected;
and he declined to take them.   When the selectmen took posses-
sion of the tax-books they considered them to be of value, and to
some extent security for the uncollected taxes due the town; and
when they offered to return them to Charles Cobleigh if he would
collect the taxes, they understood. he was to collect them for the
town.   In the suits upon the bonds of the collector judgments
were recovered at the October term, 1879, exceeding $2,000, as
the amount of uncollected taxes, which might have been collected
by due diligence on the part of the collector.

September 29, 1877, the plaintiff being the owner of an execu-
tion against Wayne Cobleigh for about $300, made an agreement
with the other selectmen, Eames and Wood, that his execution
might be satisfied by levy upon a portion of the goods of Wayne
Cobleigh then under attachment in the town suits, upon condition
that he would indemnify the town against loss by reason of releas-
ing the attachment upon the goods levied upon, and thereupon
executed and delivered a paper stipulating that "whereas the town
of Northumberland have released from attachment on certain writs
against Wayne Cobleigh and others sufficient of the goods so at-
tached to satisfy a certain execution against said Cobleigh for
about $300, I hereby undertake and agree to save the said town
harmless from any and all loss, cost, or damage which may accrue
to them or the selectmen from having so released said goods."
The paper was under seal, and dated September 29, 1877.

The plaintiff's execution was thereupon satisfied by a levy and
sale of goods so released to the amount of $321.72.   The judg-
ment against Charles Cobleigh, Wayne Cobleigh, and W. A. Lit-
tle was for $1,714.83.   An execution issued upon this judgment
was returned satisfied in full out of the estate of Wayne Cobleigh
by the application of $649.37, proceeds of personal property at-
tached and sold on the writ, by set off of a piece of land appraised
at $75, and by set-off of $\frac{1055}{1100}$ of the homestead place of said Wayne
Cobleigh in Groveton village, said homestead place being appraised
at $1,100.   Seizin and possession of the real estate set off were
given to the town, and the execution and levy were duly recorded
in the Coös registry of deeds.

February 27, 1880, and before the completion of the levy, Cob-
leigh and his wife made a written request and demand on the offi-
cer holding the execution to have a homestead in the premises
levied upon set out and assigned to them.   This request was re-
fused, and the levy upon the homestead place was made disregard-

ing the application for the assignment of a homestead.   July 6,
1877, after the attachments in the Northumberland suits, Wayne
Cobleigh executed a mortgage of his homestead place to Kensell,
Tabor & Co., of Portland, Me., to secure his note of that date for
$397 payable in one year, and his wife joined in the execution of
the mortgage, both releasing their homestead rights.   April 2,
1880, Kensell, Tabor & Co. commenced a foreclosure of this mort-
gage by bill in equity against Wayne Cobleigh and his wife and
the town of Northumberland, and at the October term, 1882, it
was adjudged and decreed that the levy of the town of Northum-
berland upon the homestead place, made in disregard of the appli-
cation of the debtor and his wife for an assignment of a home-
stead, was void.

Since the levy of the town executions, Charles Cobleigh, Wayne
Cobleigh, and W. A. Little have had no property open to attach-
ment or levy; and the town having failed to satisfy its judgments
in full out of the property attached, by reason of the failure of the
levy upon the homestead place, called upon the plaintiff to make
good the deficiency to the extent of the value of the goods released
and applied on his execution, and upon his refusal commenced an
action upon the agreement of September 29, 1877, which is the
action the plaintiff now seeks to have enjoined.

The plaintiff's contention is, that the action at law should be
enjoined, and the written agreement surrendered to him, because,
by disregarding the demand for a homestead the sum of $600 was
lost, which might have been secured by a levy upon the homestead
place after setting out the homestead demanded by Wayne Cob-
leigh and his wife; and the remaining $455 of the deficiency might
have been secured from the uncollected taxes on the tax-lists,
which remained in the custody of the selectmen until August,
1880, when they were delivered to Charles Cobleigh against the
objection of the plaintiff.

If a homestead had been set out and assigned, as demanded by
Cobleigh and wife, the execution of the town must have been
returned unsatisfied to the extent of $455 for want of property of
the debtors on which to levy.   In making the levy, disregarding
the application for a homestead, the agents of the town acted
under the advice of eminent counsel.   When the demand for a
homestead was made, the question of the right of Cobleigh and
wife to a homestead was discussed, and the conclusion was that
they were not entitled to a homestead, and that it was safe to dis-
regard the demand; and in this view the plaintiff concurred.
There was no negligence on the part of the agents of the town in
making the levy, unless as matter of law they were chargeable
with negligence by reason of not having the question of the right
of homestead determined in the mode prescribed in Gen. Laws,
c. 138, s. 20, before completing the levy.

About August 1, 1880, Charles Cobleigh called upon R. C. Ches-

man, one of the selectmen of Northumberland, for the warrants and tax-lists taken by the selectmen in April, 1877. Chesman told him he wanted time to ascertain whether it was right for him to have them. Chesman consulted the counsel for the town in the Cobleigh suits, and was advised that the best course would be to deliver the warrants and tax-lists to Cobleigh; but on account of Spaulding's connection with the matter he had better consult him about it, and get his consent to the surrender of the books to Cobleigh. Spaulding was not a selectman at that time. Chesman saw Spaulding, and informed him that the tax-books had been called for, and that the counsel for the town advised giving them up. Spaulding objected to their being given up until his agreement was given up. At the time the agreement was made, in September, 1877, it was the understanding that the tax-books should be held as additional security for the claims of the town until they were satisfied. Cobleigh called again for the tax-books, and Chesman delivered them to him. Chesman understood that Spaulding's objection to giving up the books was that it might increase his liability on the written agreement he had given the town, upon which he might be liable in case the Cobleighs succeeded in maintaining their claim to a homestead. He also understood that Cobleigh intended to contest the right to a homestead; but at that time he had no actual knowledge of the bill in equity filed April 2, 1880, by Kensell, Tabor & Co. against the Cobleighs and the town of Northumberland.

When the tax-lists and warrants were delivered by Chesman to Charles Cobleigh, it was understood that all taxes collected upon them would go for the benefit of Wayne Cobleigh, and would not be paid to the town. At that time Chesman and all parties acting for the town understood that the executions in the bond suits had been satisfied in full by levies, which they supposed to be valid, upon the property of Wayne Cobleigh. When the tax-lists were delivered to Charles Cobleigh by Chesman there were upon the lists unpaid taxes that were collectible to the amount of $800. While the warrants and tax-lists were in the possession of the selectmen, no attempt was made to collect anything upon them. No steps were taken for the removal of Charles Cobleigh as collector, or for the appointment of a new collector in his stead.

The defendant claimed that until Charles Cobleigh was removed and a new collector appointed, the selectmen had no right to retain the tax-warrants and lists; and that Spaulding, being one of the selectmen and interested individually in the matter, should have taken active measures to have Cobleigh removed and a new collector appointed to take the tax-lists and collect them. The plaintiff claimed that the refusal of Charles Cobleigh to take back the warrants and proceed with the collection of the uncollected taxes upon his return amounted to a resignation of the office, but that there was no call upon Spaulding or any of the selectmen after-

ward to fill the vacancy, or take any active measures for the collection of the taxes so long as it was understood that the town were secured in the proceedings upon the bonds, and that the legal wrong to the plaintiff consisted in giving up the tax-lists for the benefit of Wayne Cobleigh against the plaintiff's objection, before it had been determined whether the claim for a homestead was sustained.

*Ladd & Fletcher*, for the plaintiff. The case clearly shows that the books from the first were considered by the town of value, and were, in fact, of value, as a source from which the town could have obtained a large part of the uncollected taxes, thereby lessening to a great extent the amount for which Cobleigh was liable.

When the town gave up to Cobleigh, in direct disregard of Spaulding's protest, the tax-warrants, they thereby assumed all risk for any loss which might accrue to the town or to Spaulding to the extent of the taxes, which were then on the list, that were collectible. Every principle of equity and good faith required the defendants either to retain the tax-books as a part of their security, or else, if they made their election to give them up against the protest of Spaulding, to bear the loss resulting therefrom. The case shows that at the time the tax-books were given up the town were aware of the fact that Cobleigh intended to claim a homestead, and defeat to that extent the levy. Spaulding claimed that the town should not give up the books until his agreement was given up to him. A stronger case of one party trying to visit upon another the direct result of his deliberate act cannot easily be conceived.

The obligations of Spaulding's bond did not extend to indemnifying the town for their own mistakes. It would be a strange construction of this paper to hold that Spaulding's liability upon it extended beyond his own acts, and covered the mistakes and blunders of the town and their agents. Suppose the town had neglected, through mistake, negligence, or want of knowledge, to levy upon the real estate within the time required by law, and had thereby lost their lien, could it be claimed in such a case that Spaulding was liable upon this indemnity? The undertaking of Spaulding was only against loss, cost, or damage which accrued to the town from having released the goods,—loss, cost, or damage which could fairly and legitimately be said to result from so releasing the goods,—not such as should come upon the town as the direct and proximate consequence of a failure to proceed according to law. The loss and injury which resulted from a disregard of the statute provisions in making the levy must fall upon the party in legal fault. It has been claimed that because Spaulding was one of the selectmen at the time the agreement was made, he therefore stands differently from what he would had he not occupied that position. But no weight can be attached to that fact, because the other two selectmen were present and acted on behalf of the town

in making the agreement, and there is no pretence but they acted in good faith, nor that Spaulding did not act in equally good faith throughout.

The case finds that "When the demand for a homestead was made, the question of the right of Cobleigh and his wife to a homestead was discussed, and the conclusion was that they were not entitled to a homestead, and that it was safe to disregard the demand; and in this view the plaintiff concurred." The fact that Spaulding concurred in the view that Cobleigh and wife had no homestead was of no importance. He was not one of the selectmen: he had no authority in the matter. The fact that he concurred in the general opinion no one contends was the reason why the levy was made as it was. If he had not concurred, the levy would have been made just as it was made. It was made under the advice of counsel, and by order and direction of the officers of the town. The fact that Spaulding concurred in the belief that Cobleigh and wife had no homestead is of just as much importance and has just as much bearing as the fact that any other citizen of Northumberland thought the same. Nothing that he did or said influenced the officers of the town with reference to the set-off, and the town are in no different position from what they would have been had he believed and advised directly the other way.

Charles Cobleigh's conduct in leaving the state, and giving directions to have the tax-lists given up to the selectmen, and subsequently refusing to take the tax-lists and collect the uncollected taxes, practically amounted to a resignation of the office of collector. A resignation may be either express or implied. *Cloutman* v. *Pike*, 7 N. H. 210; *Johnston* v. *Wilson*, 2 N. H. 202. The selectmen had authority under the circumstances to appoint a new collector in place of Cobleigh, because by his acts and conduct he clearly indicated that he intended to and did resign his office of collector. Spaulding held the office of selectman less than a year after Cobleigh refused to take the lists, and never afterwards. At the time his term of office expired the suits had not been tried, and no one was aware that Wayne Cobleigh was to be held for so large an amount as was subsequently recovered against him.

*Wm. & H. Heywood*, for the defendants. The judgments were supposed to have been satisfied in full out of the property of Wayne Cobleigh, and Charles Cobleigh then demanded the tax bills in behalf of Wayne Cobleigh, that the taxes due might be collected for his benefit and to indemnify him for his great loss. After some delay, and on the advice of counsel, the selectmen gave up the tax-bills to the collector. The plaintiff claimed when the tax-bills were given up that the selectmen should hold them as indemnity to satisfy anything that might remain unsatisfied of the town's claims, so that he should not be called upon on his obligation given on the release of the goods from the attachment.

It is to be noticed that the plaintiff was one of the selectmen when the goods were released, and the obligation was given by him. When the tax-bills were given up by the selectmen, they had reason to believe that the town's claims were fully satisfied, and that they ought to be delivered to the collector, that Wayne Cobleigh might get what he could to indemnify him for his loss. The town had chosen to rely on the collector's bonds for indemnity, and had prosecuted them to judgment, and had procured them to be satisfied, and the selectmen had no right to hold the tax-bills for the town. Then why should they hold them, if under any circumstances they could have done so? It is said that the selectmen should not have given them up, if by doing so they had reason to suppose they would prejudice the rights of the plaintiff. But the court have found that on the advice of eminent counsel the levy on the homestead was made. The plaintiff was one of the selectmen, and concurred in making the levy on the whole of this homestead. The selectmen, therefore, had every reason to suppose that the town were paid, and that there could be no claim to look for further security. And the court have found, as a fact, that the selectmen were not negligent in making the levy. If there was any negligence, it was because they did not rightly decide the law, and act contrary to the advice of eminent counsel. And the only foundation for the plaintiff's claim is, that the town, by their selectmen, negligently conducted in a way to prejudice his rights.

We maintain that the selectmen never had a right to hold the tax-bills against the claim of the collector. What right have selectmen to collect taxes? It is true that a collector may be removed on certain grounds; but by Gen. Laws, c. 58, s. 1, it is enacted that his powers as collector "shall continue till the taxes in his list are collected." One way to remove a collector is to remove him in case he fails to give a new bond on notice as provided by law. But this cannot be done if the bonds are sufficient; and the case shows that the collector's bonds were sufficient, as proved by the attachments.

If any one interested in the matter had supposed that the collector was incapacitated to discharge the duties of his office, then proceedings should have been commenced to have the selectmen hear the matter, and if they found such to be the fact, to remove him and appoint a new collector. The business was in such shape that there was no obligation on the town to make the move; and if the plaintiff had an interest to have it done, he should have taken measures for that purpose. Until a removal was made Charles Cobleigh was the collector "till all the taxes on the list were collected," as provided by the law cited, and had, of course, a right to the tax-bills. If under such circumstances the selectmen had detained them, they would have been liable to a suit.

The agreement declared on was made, as already said, by the

plaintiff when he was one of the selectmen, and he procured the other selectmen to take it and release the attachment, and he is bound by it. But we contend that no doings of the selectmen, so far outside of their legal and well defined duties as this transaction was, can prejudice the town and subject them to a loss of the amount that was secured and should have been retained for the security and payment of the debt to the town.

It was not a management of the "financial affairs of the town" to release this attachment to favor the plaintiff.

SMITH, J.   1. The defendants are not, as matter of law, chargeable with negligence by reason of not having had the question of the right to a homestead determined, in the mode prescribed in Gen. Laws, *c.* 138, *s.* 20, before completing the levy. Whether they were negligent in this respect is a question of fact which has been found in their favor. Furthermore, the plaintiff, at the time of the levy, concurred in the conclusion of the defendants, that Cobleigh and wife were not entitled to a homestead, and that it was safe to disregard their demand. Having assented to the levying of the execution without the setting out of a homestead, he cannot now be heard to say the defendants were negligent in disregarding the demand.

2. The plaintiff contends that his agreement to indemnify the town ought not to be enforced against him because of the neglect of the selectmen to enforce the collection of the uncollected taxes. It is not contended that there was any resignation of the office of collector by Charles Cobleigh, except by implication. Whether his action in April, 1877, was a resignation of the office, is a question of fact which has not been found; nor, if there was a resignation, has its acceptance been found. The offer of the lists to him in April, 1877, and his calling for and receiving the lists in August, 1880, are facts from which it would seem the parties—collector and selectmen—understood he had not resigned.

The selectmen at any time from and after April, 1877, might have required of him a new bond within ten days after a written notice to that effect, and upon his neglect to give one, might have removed him without a hearing. G. L., *c.* 42, *s.* 9. It was the duty, then, of Charles Cobleigh, not having resigned nor been removed, to collect the uncollected taxes, according to the precept of his warrants, first for the town, and, secondly, for the benefit of his sureties in case the judgments of the town should be satisfied out of the property of his sureties. The delinquent tax-payers were not released from liability to pay their taxes, or from compulsory payment, by the fact that the defendant town recovered judgment against the collector and his sureties for the amount of the uncollected taxes. The selectmen had no power to agree that the collection might be stayed or delayed. They could neither collect the taxes themselves, nor give directions concerning their

collection.   They had no power over the collector, except to remove him if in their judgment he should become insane, or otherwise incapacitated to discharge the duties of collector, or should fail to give a new bond when required.    G. L., c. 42, s. 9; *Northumberland* v. *Cobleigh*, 59 N. H. 250, 255.    It does not appear that the return of the lists to Charles Cobleigh, in August, 1880, was wrongful.

The plaintiff's claim for relief seems to rest upon two grounds,— (1) that the defendants omitted to enforce payment of the uncollected taxes, and (2) that he was prejudiced by the redelivery of the lists to the collector.    The lists were delivered to Cobleigh against the objection of the plaintiff.    But it does not appear how he would be benefited by having the lists lodged with the selectmen, thereby depriving the collector of the power of collecting the delinquent taxes, the lists undoubtedly growing more uncollectible with the delay.    Any collections made by the collector would belong primarily to the defendants until their claims against him should be satisfied, and the balance they would hold in trust for the benefit of his sureties, whose property may have been taken to satisfy his debt to the town.    Any verbal understanding that the taxes should go for the benefit of Wayne Cobleigh, and were not to be paid to the town, could not control the duty of the collector or selectmen.

The defendants having released their attachment upon the plaintiff's undertaking to indemnify them, they owed him no duty except to refrain from the doing of any act which might work injury to him.    If they had more than one remedy, as by extent, a suit on the collector's bond, or the appointment of a new collector (*Northumberland* v. *Cobleigh*, 59 N. H. 250, 255), the plaintiff's agreement gave him no right to elect which remedy the defendants should pursue.    By accepting the plaintiff's agreement the defendants did not waive or abandon any remedy given by the law to secure payment from the collector of the delinquent taxes.    If one course was more favorable than another to the plaintiff, it was incumbent on him, at least, to make his wishes known.    But if there was any negligence in the selectmen in not enforcing collections prior to March, 1878, the plaintiff as one of the board was guilty with the others, and cannot complain that nothing was done; and it does not appear that he ever complained after March, 1878, that the taxes were not collected, or requested his successors in office to appoint a new collector, require a new bond of Cobleigh, or take any other steps to compel payment of the uncollected taxes.    Having done nothing while he was in office to compel payment of the delinquent taxes, and having made no complaint after he went out of office that nothing was done, it would seem that he was content to have nothing done.

Upon the facts reported the plaintiff shows no cause for relief.

*Bill dismissed.*

CLARK, J., did not sit: the others concurred.