JOHN H. WOLTHAUSEN *vs.* WILLIAM F. TRIMPERT.

Third Judicial District, Bridgeport, October Term, 1918.
RORABACK, WHEELER, BEACH, GAGER and CURTIS, Js.

A contract of guaranty presupposes the existence of an obligation upon
   the part of a third person to which it is collateral; while a contract
   to indemnify is an original undertaking to save the promisee harm-
   less against loss or damage of a specified character which may
   happen in the future.

Having sold his stock in a Hat Company to the corporation for $18,000
   in cash, the plaintiff agreed, at the request of the defendant who
   was one of the principal stockholders of the Hat Company, to
   accept in part payment an assigned merchandise account for
   $10,000 which was entitled to an extension of credit for ninety
   days after its amount should be reduced to $5,000; and in considera-
   tion thereof the defendant promised and agreed to "bear an equal
   share of any loss that may be incurred by the said Wolthausen on
   the balance of $5,000 . . . provided the said Wolthausen does
   not extend credit beyond said period of ninety days." In an action
   on this contract to recover one half the loss sustained by the plain-
   tiff, it was *held:*—

1. That both the language of the instrument and the situation of the
   parties led to the conclusion that the obligation must be construed
   as a contract of indemnity and not one of guaranty, either absolute
   or conditional.

2. That the plaintiff was not bound to give notice of the nonpayment
   of the assigned account to the defendant, either by the terms of
   the contract or under the general law applicable to the situation.

3. That until the loss had occurred and its amount had become ascer-
   tainable, no action would lie; and that inasmuch as the present
   action was commenced within a month after the loss had been
   definitely ascertained, it was seasonably brought and was itself a
   sufficient notice to the defendant of nonpayment.

4. That the record furnished no support to the defendant's claim that
   the plaintiff had been guilty of negligence or laches in attempting
   to collect the balance due.

One who is indemnified against loss is bound to use ordinary care to
   prevent its occurrence, but if he does that it is immaterial that it
   afterward appears that some other course or action upon his part
   would have been more successful.

Mere voluntary forbearance to sue without any agreement therefor,
   is not an extension of credit.

In contracts of suretyship, unless otherwise provided, diligence and the utmost good faith are required of those claiming against the surety.

Argued October 25th, 1918—decided February 19th, 1919.

ACTION to recover one half of a loss sustained by the plaintiff upon an assigned account, for which the defendant was alleged to be responsible under his written agreement with the plaintiff, brought to and tried by the Court of Common Pleas in Fairfield County, *Booth, J.;* facts found and judgment rendered for the plaintiff for $1,613, and appeal by the defendant. *No error.*

On May 4th, 1914, the plaintiff sold to the Wolthausen Rough Hat Company all his stock in that Company for $18,000. He was to receive cash. The defendant was one of the principal stockholders of the Rough Hat Company, and at the request of the defendant's attorney the plaintiff consented to take, in part payment, an assignment from the Rough Hat Company of an account it had against the M. Oppenheim Hat Company; so that the plaintiff received in payment for his stock the assigned account amounting to $10,005.34 and the balance of $7,994.66 in cash.

The acceptance of this Oppenheim account in lieu of cash, at the request of the defendant's attorney, was of material benefit to the defendant, who was one of the principal stockholders of the Rough Hat Company, and in consideration of the acceptance of the assignment by the plaintiff, the plaintiff and defendant, on May 4th, 1914, entered into a written contract upon which this action is brought. The contract was as follows, omitting the immaterial parts: "Whereas the said Wolthausen has this day assumed the liability of the Wolthausen Rough Hat Company, a Connecticut corporation, under and by virtue of a certain agreement, dated February 7, 1914, by and between said

corporation and M. Oppenheim Hat Company, a New York corporation, and has received an assignment of a certain account held by the Wolthausen Rough Hat Company against said M. Oppenheim Hat Company, and whereas the said Trimpert is one of the principal stockholders of the Wolthausen Rough Hat Company, therefore be it agreed as follows: that said parties shall bear an equal share of any loss that may be incurred by the said Wolthausen on the balance of $5,000 which under the terms of said agreement of February 7, 1914, it is provided may remain to the credit of the said M. Oppenheim Hat Company for a period of ninety days after the indebtedness of the said M. Oppenheim Hat Company has been reduced to said sum of $5,000, provided the said Wolthausen does not extend said credit beyond said period of ninety days." This contract was signed by both parties.

The contract of February 7th, 1914, referred, among other things, to the sale of rough hat bodies by the Rough Hat Company to the Oppenheim Company, and to the credit to be given when the account of said Oppenheim Company should be reduced to $5,000. On May 21st, 1914, the account had been reduced to $4,347.40, whereupon, by the contract of February 7th, 1914, the Oppenheim Company became entitled to the ninety-day credit expiring August 21st, 1914.

Pursuant to an agreement in the contract of February 7th, 1914, the defendant became a stockholder and director in the Oppenheim Company and remained such until he resigned some time in the summer of 1914, and he had, or was chargeable with, knowledge of the financial affairs of the Oppenheim Company, and that the balance of $4,347.40 had not been paid at the time of his resignation. Also, pursuant to the contract of February 7th, the bookkeeper of the Rough Hat Company became a director and the treasurer of

the Oppenheim Company until his resignation August 27th, 1914. He knew at that time that the balance of the account had not been paid, but did not call defendant's attention to this fact or suggest payment of the account by the Oppenheim Company.

At some time prior to September 1st, 1914, the plaintiff, with his attorneys, took up the claim with the Oppenheim Company, and pressed for payment. About September 1st, the Oppenheim Company offered to assign certain accounts in satisfaction of the plaintiff's claim against it, but afterward declined to do so. On October 14th, 1914, as a result of further demands by the plaintiff, the Oppenheim Company paid $1,000 on account. No further payments were afterward made by the Oppenheim Company.

The Oppenheim Company was fairly prosperous to August 1st, 1914, but thereafter it lost credit, its business fell off, and it became in fact insolvent soon after October 1st, 1914, and this insolvency was disclosed to the plaintiff at some time prior to December 1st, 1914. The plaintiff, after August 21st and prior to his knowledge of the insolvency, made repeated demands for payment and threatened suit. The Oppenheim Company ceased to do business in December, 1914. The plaintiff brought suit against the Oppenheim Company in January, 1915, and realized nothing. The Oppenheim Company was adjudged bankrupt April 27th, 1915, and ultimately paid ten per cent, the final dividend having been received by the plaintiff December 12th, 1916.

Soon after August 21st, 1914, the defendant was informed by an officer of the Oppenheim Company, and in good faith believed, that the plaintiff's claim had been satisfactorily adjusted, and had no knowledge of the contrary until the plaintiff brought suit against the Oppenheim Company in January, 1915. The

plaintiff did not give notice to the defendant of the failure of the Oppenheim Company to pay the balance due on the assigned account until after he received the final dividend from the trustee in bankruptcy December 12th, 1916. This action was brought January 24th, 1917.

The court found due and unpaid on the plaintiff's claim against the Oppenheim Company $3,012.66 and accrued interest from December 12th, 1916, which was the plaintiff's loss on said claim, and rendered judgment for the plaintiff to recover one half, to wit, $1,613.02 from the defendant.

*J. Moss Ives* and *Thomas A. Keating,* for the appellant (defendant).

*William H. Cable,* for the appellee (plaintiff).

GAGER, J. The principal question upon the foregoing statement of facts relates to the construction to be given to the contract between the plaintiff and the defendant. The operative part of the contract reads as follows: "that said parties shall bear an equal share of any loss that may be incurred by the said Wolthausen on the balance of $5,000 which under the terms of said agreement of February 7, 1914, it is provided may remain to the credit of the said M. Oppenheim Hat Company for a period of ninety days after the indebtedness of the said M. Oppenheim Hat Company has been reduced to said sum of $5,000, provided the said Wolthausen does not extend said credit beyond said period of ninety days."

The plaintiff contends that this was a contract of indemnity or an absolute guaranty. The defendant contends that the contract was one of conditional guaranty. Very many of the cases in which the distinc-

tion between contracts of guaranty and contracts of indemnity is drawn, arise with reference to the applicability of the statute of frauds. No such question arises here, for the defendant signed the contract in question. The distinction, however, remains the same. A contract of guaranty is a collateral undertaking and presupposes some contract or transaction to which it is collateral. The definition adopted in *Ball Electric Light Co.* v. *Child,* 68 Conn. 522, 525, 37 Atl. 391, is: "A guaranty is a collateral undertaking to pay a debt or perform a duty, in case of the failure of another person, who is in the first instance liable to such payment or performance." Indemnity contracts are of great variety, but so far as a situation like that now before us is concerned, it may be said that the contract to indemnify is an original undertaking to save the indemnitee harmless against loss or damage of a specified character which may happen in the future. Bouvier's Law Dictionary. If the contract before us is a contract to indemnify, then the distinction between absolute and conditional guaranties and the characteristics of each become of no importance in the decision of this action.

Our own cases are sufficiently clear in point to control the construction of the contract between the plaintiff and defendant. The trial court correctly decided the character of this contract upon the authority of *Reed* v. *Holcomb,* 31 Conn. 360. In that case, in which the primary question was whether the undertaking was within the statute of frauds, the court, after quoting from New York and Massachusetts cases, said (p. 364): "If the promise is on a sufficient consideration moving between the immediate parties to it, and from which the promisor is to derive a benefit, in view of which the promise is made, it then becomes a new and independent contract existing entirely between the

immediate parties to it. The benefit which the original debtor may derive from it is incidental, and in no respect the object of the parties, and ought not therefore to affect the validity of their contract." *Reed* v. *Holcomb* was reëxamined, in connection with *Clement's Appeal,* 52 Conn. 464, in *Smith* v. *Delaney,* 64 Conn. 264, 29 Atl. 496, in which latter case the doctrine was stated in the following language (p. 275): "Where the inducement is a benefit to the promisor which he did not before or would not otherwise enjoy, and the act is done upon his request and credit, such promise is an original undertaking and not within the statute" of frauds. Again, in *McCormick* v. *Boylan,* 83 Conn. 686, 78 Atl. 335, the court, citing and affirming *Reed* v. *Holcomb* and *Smith* v. *Delaney,* said: "Where a benefit, legal or pecuniary, to the promisor is the inducement for a promise of indemnity, such promise is not within the statute of frauds as being a special promise to answer for the debt or default of another, but is an original promise binding upon the promisor." See *Davis* v. *Patrick,* 141 U. S. 479, 487, 12 Sup. Ct. 58, 35 L. Ed. 826.

Both the letter of the contract in question and the situation of the parties bring the present case within the rule as stated in *Reed* v. *Holcomb.* The contract is to "bear an equal share of any loss that may be incurred by the said Wolthausen on the balance" of the Oppenheim account. While not perhaps conclusive, yet this is not the natural language of a collateral undertaking. The recitals of the contract and the finding as to how it came to be given, leave no doubt as to the existence of the idea of indemnity. The plaintiff, under the terms of his sale of stock to the Rough Hat Company, was to receive $18,000 cash. The finding states that before the contract was carried out the plaintiff, "at the request of the attorney of the defend-

ant, agreed to accept the Oppenheim account in lieu of an equal amount of cash, and in consideration thereof the defendant and the plaintiff entered into the written agreement"; and the finding further states that "the acceptance of the Oppenheim account by the plaintiff in lieu of cash was of material benefit to the defendant, who was one of the principal stockholders of the Wolthausen Rough Hat Company." The defendant's contract was not made at the request of or for the benefit of the Oppenheim Company. Because of the defendant's request and for his benefit through his position as principal stockholder in the Rough Hat Company, the plaintiff accepted the assignment of the account as the equivalent of so much cash in payment from the Rough Hat Company. The plaintiff parted with his stock. If this account which he had accepted in part payment was not paid, he would suffer a loss. The defendant agreed to divide the loss if any was incurred. The situation of the parties is exactly within the language of our own cases cited above.

We may admit, as stated in *Reed* v. *Holcomb,* 31 Conn. 360, 363, that "it is often difficult from the mere words in which a promise is made to determine whether any credit was given to a third person, and the undertaking therefore collateral to the engagement or liability of such person, or whether it was a wholly independent and original undertaking. In such cases courts must rely upon the circumstances of each particular case, and its general features, in order to ascertain the intention of the parties, and how they viewed it, where it is doubtful whether it was a contract of suretyship or guaranty, or an original undertaking." If there is any doubt upon the face of the contract before us, the situation resolves the doubt and makes the contract, under the doctrine in force in this State, a contract to indemnify. Such a contract can be made subject to

such restrictions and limitations as the parties may agree upon. In the present case they did agree that the loss should be borne equally. There was a provision that when the account was reduced to $5,000 the Oppenheim Company should have a credit of ninety days. This simply meant that the plaintiff should take the account subject to the credit agreed upon by the contract between the Rough Hat Company and the Oppenheim Company referred to in the contract sued upon as the contract of February 7th, 1914. There was the further provision that the plaintiff should not extend credit to the Oppenheim Company beyond the period of ninety days. We have, then, a limited conditional contract of indemnity. There was no error in deciding and holding that the contract sued upon was a contract of indemnity and not a contract of either absolute or conditional guaranty.

The defendant claims that the plaintiff should not recover because notice of nonpayment was not given within a reasonable time after the expiration of the ninety-day term of credit, which was August 21st, 1914. The plaintiff in fact gave the defendant no notice until after the final dividend from the trustee in bankruptcy, December 12th, 1916. The defendant, however, did know that the amount had not been paid by the Oppenheim Company, soon after the plaintiff brought suit against the Oppenheim Company in January, 1915.

No such obligation to give notice, as claimed by the defendant, rested upon the plaintiff either by the terms of the contract or under the general law attaching to such a contract. *Marcy* v. *Crawford*, 16 Conn. 549, 554; *McCormick* v. *Boylan*, 83 Conn. 686, 689, 78 Atl. 335. Moreover, where the indemnity is against loss, the loss must occur and be ascertainable before the indemnitee can maintain his action. This loss was definitely ascertained when, on December 12th, 1916,

the trustee in bankruptcy of the Oppenheim Company paid its final dividend of ten per cent, and this action was brought within a reasonable time thereafter and was itself sufficient notice to the defendant.

Certain of the reasons of the appeal are based on the assumption that the contract was a conditional guaranty. These are disposed of by the decision that the contract was a contract of indemnity. But the defendant insists that, assuming the contract was one of indemnity, still he is discharged by the failure of the plaintiff to use due and reasonable diligence in the collection of the balance due. It is true that in contracts of suretyship, diligence and the utmost good faith are required to be observed by a party claiming against a surety, unless it is otherwise provided. *Aetna National Bank* v. *Hollister,* 55 Conn. 188, 10 Atl. 550. The duty of the indemnitee, in a contract to bear the loss the indemnitee may suffer on an account held by him against a third party, is, unless otherwise provided, to act in good faith and to use ordinary care, or, to put it the other way, not to be negligent in respect to the loss for which indemnity is claimed. *Burton* v. *Dewey,* 4 Kan. App. 589, 46 Pac. 325. If the indemnitee is not negligent, it matters not that it may afterward appear that some other action would have been more successful. *Spaulding* v. *Northumberland,* 64 N. H. 153, 6 Atl. 642.

The finding fully negatives any charge of negligence on the part of the plaintiff. The plaintiff did not extend the term of credit to the debtor beyond the ninety-day period provided for in the contract. Voluntary forbearance of suit is not an extension of credit unless pursuant to an agreement for some definite time, and there was no such agreement. Within a few days after the expiration of the ninety-day period the plaintiff's attorneys took up the matter and pressed for

immediate payment. The Oppenheim Company promised to turn over accounts, but for some reason did not. On October 14th, 1914, $1,000 was paid by it on the account. The plaintiff continued to press for payment and threatened to bring suit, and finally the insolvency of the Oppenheim Company was first disclosed to the plaintiff sometime between October 14th and December 1st, 1914. The Oppenheim Company was in fact insolvent soon after October 1st, 1914, according to the finding. Substantially its only attachable property in this State was stock and machinery of not over $6,000 appraisal value, and its attachment would necessarily destroy the business of the company. At no time after August 1st, 1914, did the Oppenheim Company have sufficient cash to pay its debts. Suit before October 14th might have been successful, or it might have led to immediate bankruptcy. As is said in plaintiff's brief, the plaintiff stood to lose as much as the defendant. He employed attorneys, used his and their best judgment, thought it wise not to force bankruptcy, and did collect $1,000 on an account of $4,347.40. Such action is not negligence under the circumstances shown. The claim of laches fails with the claim of negligence.

There is no error.

In this opinion the other judges concurred.