[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #142
Plaintiff Rhode Island Hospital Trust ("RIHT" or "BANK") brings an action on a promissory note against defendants Martin Trust and Georgina Macdonald. The following facts are not in dispute. On December 10, 1987 RIHT entered into a construction loan agreement with Mill at Maritime Limited Partnership ("Mill at Maritime" or "Borrower") whereby RIHT agreed to loan monies for the acquisition and renovation of a factory building for the purposes of converting same into residential condominiums and commercial space. A promissory note ("Note") in the principal amount of $11,400,000.00 was signed by Mill at Maritime in favor of RIHT, and to guarantee said Note, a guaranty agreement ("Guaranty") was signed by the defendants. Pursuant to the construction loan agreement, RIHT agreed to make advances to the Borrower of an amount not to exceed the total principal amount of the Note (paragraph "1") in accordance with procedures set forth in other provisions of the agreement (e.g. paragraphs "5" and "11"), provided that certain conditions as spelled out in the agreement were met.
By virtue of the Guaranty the defendants agree to be jointly and severally liable for the payment of 50% of the outstanding principal balance due under the Note and 100% of the outstanding interest, and for the completion of the project, as well as the costs and expenses incurred in connection with collection of any amounts due under the Note. The Guaranty also provides in paragraph "7" that the guarantors expressly waive "the right to assert in any action or proceeding hereupon any setoff, counterclaim or other claim which it may have against Lender."
The plaintiff claims to be the present holder and owner of the Note, which is alleged to be in default, and now seeks payment from the defendants as provided in the Guaranty. The substituted complaint dated May 26, 1991 contains two counts,
the first for payment due on the Note, and the second for a temporary and permanent injunction with respect to certain assets defendant Martin Trust holds outside the State.[1]
In its answer dated August 26, 1991 defendants set forth five special defenses: (1) the second count fails to state a claim upon which relief can be granted; (2) breach of the implied covenant of good faith; (3) material alteration of the principal contract between the Bank and the Borrower; (4) unclean hands; (5) estoppel. The defendants also assert four counts by way of CT Page 1846 setoff and counterclaim: (1) negligence on the part of the Bank in the administration of the loan proceeds; (2) negligent misrepresentation; (3) breach of the duty of good faith and fair dealing; (4) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). On September 6, 1991 plaintiff filed a reply to the special defenses and answer to the counterclaim.
Plaintiff has moved for partial summary judgment on liability on the complaint and for summary judgment on all counts of the counterclaim, and has submitted a memorandum of law in support thereof. Attached to the memorandum is the affidavit of John B. Valletta, Jr., First Vice President of plaintiff. The defendants have submitted a memorandum of law in opposition to said motion, and the affidavits of Georgina Macdonald and Martin Trust. The pleadings are closed as between the parties as required by Practice Book section 379. Oral arguments were presented at a session of short calendar held on October 28, 1991.
DISCUSSION
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book 384; Connecticut National Bank v. Great Neck Development Co., 215 Conn. 143, 148, 574 A.2d 1293 (1990). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495,500, 538 A.2d 1031 (1988). A "material fact" is "a fact which will make a difference in the result of the case." Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578,573 A.2d 699 (1990). "`Issue of fact' encompasses not only evidentiary facts in issue but also questions as to how the trier would characterize such evidentiary facts and what inferences and conclusions it would draw from them." United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 379, 260 A.2d 596
(1969).
The burden of proof falls on the movant to show that there are no material facts. Connell v. Connell, 214 Conn. 242, 246,571 A.2d 116 (1990). All evidence must be viewed in the light most favorable to the nonmoving party. Id., 246-47. "[S]ince litigants ordinarily have a constitutional right to have issues of fact decided by a jury,] the moving party for summary judgment is held to a strict standard . . . of demonstrating his entitlement to summary judgment." Kakedelis v. DeFabritis,191 Conn. 276, 282, 464 A.2d 57 (1983). The court may grant a motion for summary judgment on liability only and hold a hearing CT Page 1847 on damages at a later date. Practice Book 385; see McColl v. Pataky, 160 Conn. 457, 461-62, 280 A.2d 146 (1971). Summary judgment, however, is not always appropriate. "It is . . . apt to be ill adapted to cases of a complex nature . . ., which often need the full exploration of trial." United Oil Co., supra, 375. "It is also well recognized that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." Id., 376.
 1. Summary Judgment on the Complaint and Count Three of the Counterclaim
The plaintiff has moved for "partial summary judgment on liability on the complaint." While there appears to be no dispute that the loan in question was guaranteed by the defendants, or that the plaintiff is the holder of the Note and said Note is in default, the defendants have raised several special defenses thereby contesting plaintiff's right to collect from them under the Guaranty. It appears that the second special defense alleging that plaintiff breached its duty of good faith toward the defendant raises issues of fact precluding the granting of summary judgment.
"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second), Contracts, sec. 205. "An implied covenant of good faith and fair dealing arising out of a contractual relationship has been explicitly recognized in Connecticut." Economic Development Associates v. Cititrust, 3 CTLR 517, 519 (March 27, 1991, Dranginis, J.,) citing Magnan v. Anaconda Industries, 193 Conn. 558, 566, 479 A.2d 781 (1984), and was determined to apply to contract of suretyship[2] as early as 1887. See Aetna National Bank v. Hollister, 55 Conn. 188,212, 10 A. 550 (1887). See also Wolthausen v. Trimpert, 93 Conn. 260,269, 105 A. 687 (1919) ("It is true that in contracts of suretyship, diligence and the utmost good faith are required to be observed by a party claiming against a surety, unless it is otherwise provided.")
The covenant of good faith "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Restatement (Second), Contracts, sec. 205 comment a; Magnan, supra, 566. "Essentially it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended." Magna, supra, 567. See also Connecticut National Bank v. Douglas, 1 Conn. L. Rptr. 530 (April 20, 1990, Flanagan, J.). In Connecticut "good faith" is a subjective standard. Phillipe v. Thomas, 3 Conn. App. 471, 474-75, CT Page 1848489 A.2d 1056 (1985).
 "In common usage, [good faith] has a well defined and generally understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and generally speaking, means being faithful to one's duty or obligation." 35 C.J.S. 488, and cases cited. It has been well defined as meaning "An honest intention to abstain from taking an unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious." Bouvier's Law dictionary (3d Rev.), p. 1359.
Snyder v. Reshenk, 131 Conn. 252, 257, 38 A.2d 803 (1944). "The determination of good faith involves an inquiry into the party's motive and purpose as well as actual intent." Phillipe, supra, 475, citing Snyder, supra, 259. The issue of whether the plaintiff breached its duty of good faith to the defendants is a factual one best resolved by the factfinder. See Essex Savings Bank v. Leeker, 2 Conn. App. 98, 102, 476 A.2d 1071 (1984) (whether the lender has exercised its duty of care is a question of fact for the trier).
The plaintiff argues that the holding in Connecticut Bank Trust v. Carriage Lane Associates, 219 Conn. 772, A.2d (1991) is controlling here and requires that the court grant its motion for summary judgment. The Supreme Court held in that case that in the absence of an express agreement or a showing of bad faith, a senior mortgagee owes no duty to a junior mortgagee to advance the proceeds of a loan to the mortgagor in accordance with the terms of the senior mortgage. Id.
It is clear that the plaintiff misconstrues that case. Connecticut Bank Trust clearly states that a lender owes third parties a duty of good faith, which duty defendants herein assert in their special defense and third count of the counterclaim. Further, this case is clearly distinguishable in that the defendants Martin Trust and Georgina Macdonald are not "strangers" to the transaction between RIHT and Mill at Maritime as was the second mortgagee in Connecticut Bank Trust. "A guaranty contract is a contract which is collateral to a primary obligation between a debtor and a creditor . . . ." 38 Am.Jur.2d Guaranty, sec. 19; American Oil Co. v. Valenti, 179 Conn. 349,353, 426 A.2d 305 (1979) A guaranty does not stand in isolation from the loan transaction. Wolthausen v. Trimpert,93 Conn. 260, 265, 105 A. 687 (1919). Indeed, based on this collateral relationship among the parties, the surety may even CT Page 1849 assert defenses or the discharge of his debtor. American Oil Co., supra, 353. Lastly, the guaranty agreement makes explicit reference to the construction loan agreement signed by RIHT and Mill at Maritime.
In sum, it appears that the plaintiff herein owed a duty of good faith and fair dealing to the defendants with respect to the transactions undertaken by the parties. Whether plaintiff breached that duty is not ascertainable from the papers and must await trial. Thus, plaintiff's motion for partial summary judgment on its complaint is denied.
It is also clear that plaintiff's motion for summary judgment on the third count of the counterclaim (breach of the duty of good faith and fair dealing) must also be denied. Such a breach "gives rise to a distinct tort claim." Economic Development Associates, supra, 519, citing Grand Sheet Metal Products Co. v. Protection Mutual Ins. Co., 34 Conn. Sup. 46,51, 375 A.2d 428 (Super.Ct. 1977). A claim for breach of good faith may be brought in the context of the lender-borrower relationship. See Sorvillo v. Strother, 2 CSCR 1095 (October 1, 1987, Leuba, J.). Paine, Webber, Jackson Curtis, Inc. v. Winters, 13 Conn. App. 712-724.
The implied covenant of good faith and fair dealing cannot be waived.[3] Although no cases have been found on this issue, General Statutes 42a-1-102(3) clearly states that under the Uniform Commercial Code the duty of good faith cannot be waived. Since the same material issues of act arise as to this count of the counterclaim as arise with respect to the motion for partial summary judgment on the complaint, plaintiff's motion with regard to the third count of the counterclaim is denied as well.
2. Summary Judgment on Counts One, Two and Four of the Counterclaim.
Defendants assert by way of setoff and counterclaim, actions for negligence, negligent misrepresentation and violations of CUTPA. Defendants have no right to assert their claims as setoff for the reasons set forth below. The defendants may assert their CUTPA claim as a counterclaim, but the negligence and negligent misrepresentation claims fail and, thus, cannot go forward.
Since the basis for setoff is distinct from that for counterclaim, each will be addressed separately. See Savings Bank of New London v. Santaniello, 130 Conn. 206, 210,33 A.2d 126 (1943) ("A counterclaim arises out of the same transaction described in the complaint [whereas] [a] set-off is independent thereof.") CT Page 1850
a. Setoff
Defendants in their allegations purport to set off against the plaintiff's complaint the claims or Mill at Maritime, the Borrower. Defendants have no right to set off claims of the Borrower where the Borrower is not a party to the action.
The general rule regarding when a surety may set off the claims of its principal against a creditor when the surety is sued alone is set forth in the Restatement of the Law of Security:
 The surety cannot set off against the creditor the principal's claims against the creditor unless
 (a) the principal has assigned his claim to or consented to its use by the surety; or instituted by the creditor; or (c) the principal is insolvent.
Restatement of the Law of Security, Sec. 133(2) (1941). Accord F. Childs, Law of Suretyship and Guaranty, Sec. 148 (1907); E. Spencer, Suretyship, Sec. 194 (1913); Note, The Availability of a Principal's Defense to His Uncompensated Surety, 46 Yale L.J. 833, 942 (1937). The Comment to the Restatement gives three reasons for this rule: (1) judgment for the surety on the principal's claim does not in all instances bar the principal from asserting the same claim against the creditor, since the principle was not a party to the first action; (2) judgment for the surety on the principal's claim could bar the principal from recovering any excess over the creditor's claim; and (3) if several sureties were sued separately, each might assert the same claim. Comment on Subsection (2)b.
There is no Connecticut case which resolves the issue of whether a surety when sued alone may set off the claims of its principal. Cases in other jurisdictions, however, support the general rule set forth in the Restatement. See, e.g., In re Yale Express System, Inc. v. Nogg, 362 F.2d 111, 114-15 (2d Cir. 1966) Friendly, J.); United States v. Morley Construction Co.,98 F.2d 781, 789-90 (2d Cir.), cert. denied sub nom Maryland Casualty Co. v. U.S., 305 U.S. 651, 59 S.Ct. 244, 83 L.Ed. 421
(1938) (Hand, J.); Atlantic Coast Line R. Co. v. United States Fidelity Guaranty Co., 52 F. Sup. 177, 188 (M.D.Ga. 1943); Whaley v. Henderson, 227 Ala. 158, 148 So. 848, 849 (1933); People v. United States Fidelity Guaranty Co., 8 Mich. App. 540,154 N.W.2d 532, 535-536 (1967). CT Page 1851
Even if a surety were entitled to set off the claims of its principal in Connecticut, the claims the defendants herein purport to set off, namely negligence, negligent misrepresentation and CUTPA, are not of the sort that can be set off. The right of setoff is governed by General Statutes52-139 which states: "In any action brought for the recovery of a debt, if there are mutual debts between the plaintiff. . . and the defendant or defendants, or any of them, one debt may be set off against the other. ." General Statutes 52-139(a); Savings Bank of New London, supra, 211. "Mutual debts are cross debts in the same capacity and right and of the same kind and quality; they must exist between the parties in their own right and they must be clearly ascertained and liquidated." Armatino v. Romano, 1 Conn. L. Rptr. 60, 61 (November 28, 1989, Cretella, J., citing General Consolidated, Ltd. v. Rudnick Sons, Inc.,4 Conn. 4, 10, 20, A.2d 91 (1941); Hartford National Bank Trust Co. v. Riverside Trust Co., 117 Conn. 276, 280 A. 811 (1933). In this case the debts are not mutual, as defined above, nor are they clearly ascertained and liquidated.
Where there are equitable considerations involved, courts may allow setoff even though the requirements of section 52-139
are not met. Sullivan v. Merchants National Bank, 108 Conn. 497,499-500, 144 A. 34 (1928); Practice Book Sec. 168. The equity of the court has been invoked successfully, for example, where the plaintiff was insolvent and the debt owed the debtor had not yet matured. See Sullivan, supra. No such equitable considerations have been presented by the defendants.
Based on the above discussion, it is clear that the defendants herein cannot assert the claims of the Borrower to set off the claims of the Bank. No where is it alleged that the Borrower assigned its claims to the defendants or consented to their use by the defendants. Nor is the Borrower insolvent or a party to this action. Further, the requisites of General Statutes 52-139 have not been met. The alleged debts are not "mutual" as defined by case law; nor are the claims asserted by the defendants liquidated. Thus, unless counts one, two and four of the counterclaim can stand on their own as counterclaims, the defendants are precluded from asserting them, and plaintiff's motion for summary judgment as to them must be granted.
b. Counterclaims
(1) Negligence
Defendants' first count of their counterclaim is for negligence. Plaintiff Bank has moved for summary judgment on CT Page 1852 this count on the grounds that the Bank owes no duty of reasonable care to the defendants. It is clear that the plaintiff is correct. In Connecticut Bank Trust Co., supra, the Supreme Court in dicta stated:
 `Outside the contract, the major duty which a construction lender owes to any other party is the duty of good faith; though a loan may be inefficiently managed and with adverse consequences, have nay recourse against the lender unless it is alleged and proved that the lender acted in bad faith.'
Connecticut Bank Trust Co., supra, 782, quoting National Bank of Washington v. Equity Investors, 81 Wash.2d 886 920,506 P.2d 20 (1973) (emphasis added). Defendants have not provided any authority to support the proposition that a duty of reasonable care is owed by the Bank to the defendants. Thus, it appears that plaintiff's motion for summary judgment on this count of the counterclaim should be granted.
(2) Negligent Misrepresentation
The second count of the defendants' counterclaim is for negligent misrepresentation. The elements of this cause of action are summarized in D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 217-18, 520 A.2d 217
(1987):
 `One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused by them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'
(quoting Restatement Second), Torts sec. 552 (1979)). "[O]ne who relies upon information in connection with a commercial transaction may reasonably expect to hold the maker to a duty of care only in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended to supply it for that purpose." Restatement, supra, 552, comment a.
The defendants' allegations are insufficient to withstand summary judgment. The alleged misrepresentations concern statements made by the Bank;s architect about the progress of construction and the financial health of the project. The CT Page 1853 statements that they assert as untrue all occurred after the guaranty agreement was signed. It is unclear how defendants could possible have relied on them when they signed the guaranty agreement, the business transaction upon which they are sued here. Further, the statements were allegedly made to the Bank by the Bank's architect. No where do the defendants assert that the architect made the statements directly to defendants. Defendants claim that their reliance on these statement caused them "to spend in excess of $4 million on the project which, but for the Bank's negligent misrepresentations [defendants] would not have had to spend." Meridian Group, not a party to this action, was the entity that spent the $4 million (see affidavit of Georgina Macdonald, sworn to October 24, 199_, paragraph "21"). Since the defendants have not sufficiently plead a cause of action for negligent misrepresentations, it appears that plaintiff's motion as to this count of the counterclaim should be granted.
(3) CUTPA
"No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes 42-110b (a). "Person" is defined to include corporations and other legal entities. Id., sec. 42-110a(3). "It is the intent of the legislature that in construing [42-110b (a)], the commissioner and the courts . . . shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act . . . ." General Statutes42-110b(b). The legislature also intended that CUTPA "be remedial and be so construed." General Statutes 42-110b(d). Certain exemptions to CUTPA are set forth in section 41-110c. The pertinent language is as follows:
 (a) Nothing in this chapter shall apply to: (1) transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States . . . .
 (b) The burden of proving exemption . . . from the provisions of this chapter shall be upon the person claiming the exemption."
General Statutes 42-110c.
Connecticut superior courts are divided on the issue of whether CUTPA applies to banks and the Supreme Court has not yet resolved the issue. Westledge Real Estate, Inc. v. Suffield Bank f/k/a Suffield Savings Bank, 3 CTLR 217, 218 (January 24, CT Page 1854 1991, Clark, J.). In cases which hold the CUPTA is inapplicable to banks, the courts reason that since banks are expressly exempt from the FTCA, they are also exempt from CUTPA. See, e.g., Bristol Savings Bank v. Sattler, 5 CSCR 351 (March 29, 1989, Aronson, J.); People's Bank v. Horesco, 1 CSCR 62 (January 22, 1986, Jacobson, J.), aff'd on other grounds, 205 Conn. 319
(1987).
A majority of the courts, however, have determined that CUTPA does apply to banks. See, e.g., Lafayette Bank Trust Co. v. Javis, 5 CTLR 49 (September 27, 1991, Spear, J.) breach of forbearance agreement now show not be subject of pervasive state or federal law or regulations); Andrus v. North American Bank, 6 CSCR 458 (April 3, 1991, Fuller J.) (fact that banks may be regulated by one set of statutes does not preclude regulation or liability under another); Westledge Real Estate, supra (exempting banks from CUTPA may be improper expansion of General Statutes 42-110c); Economic Development Associates, supra (CUTPA applies to consumer-oriented activities of banks, which activities include transactions with commercial borrowers); Bristol Savings Bank v. Szydlowski, 3 CTLR 146
(January 7, 1991, O'Connor, J.) (CUTPA is remedial in nature); Andrews v. Connecticut Bank Trust Co., 1 CSCR 795 (September 22, 1986, T. Sullivan, J.) (Supreme Court has indicated that CUTPA is to be broadly interpreted); Ebersol McCormick v. Torrington Savings Bank, 4 CSCR 499 (May 26, 1989, Pickett, J.) (no explicit exemption for banks); Weisman v. Westport Bank Trust, 1 CSCR 283 (April 30, 1986, Zoarski, J.) (Methods, acts or practices not heretofore specifically declared unlawful by the FTC or the federal courts can be found to be prohibited by CUTPA).
The following criteria should be applied to determine if a practice violates CUTPA:
 "`(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept or unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen), Conaway v. Prestia, [191 Conn. 484, 490-91, 464 A.2d 847 (1983)], quoting FTC v. Sperry Hutchinson Co., 405 U.S. 233m 244 n. 8, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972)."
Sportmen's Boating Corp. v. Hensley, 192 Conn. 747, 756, CT Page 1855474 A.2d 780 (1984), quoting McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558 568, 473 A.2d 1185 (1984). It is not necessary that all three criteria are satisfied; a practice may be deemed to be unfair based on the degree to which one of the criteria is met. Atlantic Richfield Co. v. Canaan Oil Co.,203 Conn. 234, 242, 520 A.2d 1008 (1987).
In this case, under the allegations as set forth in defendants' counterclaim, whether plaintiff's conduct offends an "established concept of unfairness" or whether such conduct is "unethical" or "oppressive" or "causes substantial injury to consumers or other businessmen", see Sportsmen's Boating Corp., supra, 490-91, raises factual issues inappropriate on a summary judgment motion.
Further, a CUTPA claim cannot be waived by contract, given that the intent of the statute is remedial. See General Statutes 42-110b(d); Web Press Services Corp. v. New London Motors, Inc., 203 Conn. 342, 354, 525 A.2d 57 (1987) (CUTPA must be construed liberally in an effort to effectuate its public policy goals); Hernandez v. Monterey Village Associates Limited Partnership, 17 Conn. App. 421, 425, 533 A.2d 617 (1989) ("policy behind CUTPA is to encourage litigants to act as private attorneys general and to bring actions for unfair or deceptive trade practices"). See also Fedor v. Mauwehu Council,21 Conn. Sup. 38, 39-40, 143 A.2d 466 (1958) (general policy against construing agreements so as to confer immunity from negligence especially desirable where parties do not have equal bargaining power and one party must either accept what is offered or be deprived of the relation).
CONCLUSION
It is so ordered that:
(1) the motion for summary judgment on the first and second counts of the counterclaim (negligence and negligent misrepresentation) is granted;
(2) the motion for summary judgment with respect to liability on the complaint is denied;
(3) the motion of summary judgment on the third count of the counterclaim (breach of good faith) is denied; and
(4) the motion for summary judgment on the fourth count of the counterclaim (CUTPA) is denied.
BURNS, J. CT Page 1856